Charles EVANS, Appellant,

v.

The STATE of Texas, Appellee.

No. 485–82.

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1983.

---

James Stafford, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft and Keno M. Henderson, Jr., Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

After finding appellant guilty of capital murder, the jury answered one of the special issues in the negative at the punishment stage. Art. 37.071(b), V.A.C.C.P. Punishment was assessed at life. The conviction was affirmed by the Court of Appeals for the Fourteenth Supreme Judicial District (Houston). We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that appellant's confession was properly admitted into evidence.

Appellant allegedly murdered a jewelry store employee, Woodrow R. Schultz, by shooting him with a gun during the course of a robbery. V.T.C.A. Penal Code, Sec. 19.03(a)(2).

The murder took place on June 29, 1978. Appellant was arrested late in the evening of July 6. On July 7 at approximately 8:40 a.m., appellant was taken before a magistrate and given his warnings.

Appellant was next taken to the homicide division of the Houston Police Department where he was interrogated by Detective J.L. Bonds and others. Bonds read appellant the *Miranda* warnings.

Bonds told appellant he would be placed in a lineup at 10:00 a.m. Appellant was offered the use of a phone to contact an attorney or anyone else. He called or tried to call his girlfriend Donna Burrell to tell her to come to the police station. Appellant was told that his accomplice, Leonard Pitre, had given a statement implicating appellant in the murder.

The lineup commenced at about 10:30 a.m. Prior to appellant's lineup, appellant noticed Pitre and Pitre's attorney Joseph Naron. Pitre was also scheduled to be placed in a lineup. Bonds thought he saw appellant conversing with Naron.

Appellant was advised that he had a right to an attorney at his lineup. Appellant stated that Naron would be representing him. He did not limit representation to the lineup. Bonds and his colleagues told appellant that would not be possible, since Naron represented Pitre, and suggested it might be better to get someone else. Bonds testified that appellant "seemed satisfied with that."

Nevertheless, Bonds conceded that appellant did not waive right to counsel at the lineup. The lineup sheet states specifically that appellant did not waive right to counsel and lists Naron as appellant's attorney. Naron never told Bonds that he would not represent appellant and Bonds never heard Naron tell appellant he would not represent

him. Naron was present during appellant's lineup.

The lineup ended at approximately 10:45 a.m. At some point after the lineup ended, appellant, according to Bonds, was again given the *Miranda* warnings.

Appellant was immediately taken back to an interrogation room in the homicide division. He was informed that one witness had picked his picture from a photo spread and that another witness had identified him at the lineup. He was not told that two witnesses tentatively identified somebody else at the lineup or that the witness who identified him could not place him inside the jewelry store where the murder occurred.

Upon returning to the homicide division it was discovered that Burrell had arrived. Appellant was allowed to talk to Burrell in private for ten or fifteen minutes. Appellant then gave an oral statement to the police, confessing to the shooting of the deceased. Bonds began reducing the confession to writing at approximately 11:50 a.m. This process was completed by 1:33 p.m.

Bonds had appellant read the typed statement aloud to witnesses. This included the appropriate warnings and a waiver of rights. Appellant, stating that he understood the warnings and the waivers, signed the confession.

Appellant, citing *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), asserts that his Fifth Amendment privilege against self-incrimination was violated by the admission of his statement into evidence. He contends that once he indicated that Naron was his attorney, no further interrogation should have occurred without Naron or another attorney being present.

In *Miranda,* the United States Supreme Court stated:

> "We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently com-pelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.
>
> "...
>
> "The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today ...
>
> "...
>
> "Accordingly, we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today ...
>
> "...
>
> "Once warnings have been given, the subsequent procedure is clear.... If the individual states that he wants an attorney, the interrogation must cease until an attorney is present at that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning ...
>
> "...
>
> "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning ..." 384 U.S. at 444, 445, 467, 469, 471, 473, 474, 86 S.Ct. at 1612, 1624, 1625, 1626, 1627.

In *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975),

involving waiver of the right to remain silent, the Supreme Court stated in footnote 10:

"The dissenting opinion asserts that *Miranda* established a requirement that once a person has indicated a desire to remain silent, questioning may be resumed only when counsel is present . . . But clearly the Court in *Miranda* imposed no such requirement, for it distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and directed that 'the interrogation must cease until an attorney is present' only 'if the individual states that he wants an attorney . . .'"

In *Edwards v. Arizona,* supra, the defendant who was being interrogated by the police asked to see an attorney before "making a deal" with the prosecutor. The next day despite the fact that no attorney had been provided and the defendant "did not want to talk to anyone" he was taken from his cell, given *Miranda* warnings, and interrogated further. Now willing to talk, the defendant made a confession.

In ruling that the use of the confession against the defendant violated his rights under the Fifth and Fourteenth Amendments the Supreme Court stated:

"[A]lthough we have held that after initially being advised of his *Miranda* rights the accused may himself validly waive his rights and respond to interrogation, the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication,

exchanges or conversations with the police.

". . . We . . . emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 U.S. at 484, 485, 101 S.Ct. at 1884, 1885.

In the instant case the State contends there is a difference between the Sixth Amendment right to counsel at a post-charge lineup and the Fifth Amendment right to counsel during interrogation. "The former is to assure a fair lineup proceeding while the latter is to assure that a confession is not coerced from an accused."

The State's position is that appellant only invoked his Sixth Amendment right to counsel at the lineup and not his distinct Fifth Amendment right. Accordingly, this takes the case out of the ambit of *Edwards v. Arizona,* supra.

Conceivably, there could be cases where the State's theory would apply. This is not one of them. It is clear that the lineup itself was part of the entire custodial interrogation process. Appellant was interrogated before the lineup began. Immediately after the lineup was over, appellant was escorted back to the interrogation room where questioning continued and the results of the lineup were used in an effort to elicit a confession. Utilizing lineups and the results of lineups as part of the interrogation process is a well-known police technique, which was referred to in *Miranda*. Here within forty-five minutes of the lineup's completion appellant had orally confessed and Detective Bonds was beginning to write down the statement.

■ In these circumstances it is irrelevant that the request for an attorney was made at the time of the lineup. Once the custodial interrogation has begun, if the accused requests an attorney "at any stage of the process," there can be no questioning in the attorney's absence unless the accused himself initiates further communication.

The State and the Court of Appeals rely on our decision in *Kelly v. State,* 621 S.W.2d

176 (Tex.Cr.App.1981). In *Kelly,* however, the accused never requested the presence of an attorney. An officer merely overheard the defendant's mother try to contact an attorney by phone.

Here, despite the State's repeated argument to the contrary in its brief, appellant clearly stated that Naron was to be his attorney. Rather than immediately honoring this request by making sure Naron or some other attorney was present and representing appellant before the lineup began *and before any further interrogation occurred,* the officers actively discouraged appellant from utilizing Naron's services. Then, as if no request had ever been made, the interrogation continued in the absence of appellant's attorney.

Once an attorney is requested *interrogation must cease* until the attorney is provided or the accused initiates further conversation. In the context of this case, this means that after the lineup was completed appellant should have been returned to his cell and not questioned any further until Naron or another attorney was there to represent him.

The Court of Appeals also relied on *Kelly* for the proposition that appellant initiated conversation with the police after a discussion with a family member. On the facts of *Kelly,* however, it was held that interrogation had ceased when the accused met with his family members. Here, during the middle of the State's interrogation effort, appellant was allowed to talk to his girlfriend for ten to fifteen minutes after he had invoked his right to counsel. Appellant was still in the interrogation room. His desire to make a statement shortly after talking to Burrel did not erase or render harmless the interrogative nature of the police activity or the police violation of *Miranda* and *Edwards.* See *Wilkerson v. State,* 657 S.W.2d 784 (Tex.Cr.App.1983). Interrogation had not ceased when appellant requested counsel. The officers were still actively attempting to obtain a confession. In this context it is incorrect to say that appellant initiated further conversation with the police.

This case is distinguishable from *Griffin v. State* (No. 68,924, 5/25/83). In *Griffin,* the defendant spontaneously withdrew his request to speak with counsel *before* he was reinterrogated. The initial request to speak with an attorney was honored by police officers.

■ By way of contrast, in the instant case, appellant did not withdraw his request to be represented by attorney Naron and the request was not honored by police officers. In fact, appellant was actively discouraged from employing Naron. Appellant was then reinterrogated without benefit of counsel, even though he did not initiate any conversation with the police.

The use of appellant's confession against him at trial violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution. Our decision is mandated by the Supreme Court's opinions in *Miranda v. Arizona,* supra, and *Edwards v. Arizona,* supra.[1]

The judgments of the Court of Appeals, 632 S.W.2d 912, and the trial court are reversed and the cause is remanded to the trial court.

W.C. DAVIS, J., dissents.

---

1. Today's decision is unaffected by the recent opinion of the United States Supreme Court in *Oregon v. Bradshaw,* — U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). In *Bradshaw,* the defendant initiated conversation with the police *prior* to being subjected to further interrogation. Also, since the prophylactic requirements of *Edwards* were not met in the instant case, there is no need to inquire if there was a valid waiver of the right to counsel.