**Randall Haige JAMAIL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–85–019–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 10, 1986.
Rehearing Denied July 31, 1986.

J. Gary Trichter, Houston, for appellant.

John B. Holmes, Jr., Winston E. Cochran, Jr. and Shirley Cornelius, Houston, for appellee.

Before SEARS, DRAUGHN and ELLIS, JJ.

## OPINION

SEARS, Justice.

The appellant was found guilty by a jury of the misdemeanor offense of driving while intoxicated (DWI). The court assessed punishment at ninety days' confinement, probated two years, and a $1,000.00 fine. We find unassigned error in the refusal to terminate custodial interrogation *after* a request for counsel was made. We reverse the judgment of the trial court.

The evidence reveals that Officer Robert Jurich observed appellant traveling at a high rate of speed and driving erratically. Appellant exited the freeway and was stopped at a parking lot on the service road where he was administered a field sobriety test. The arresting officer formed the opinion that appellant was intoxicated, detained him and called a special "Step" unit. The "Step" unit officers arrived, observed appellant and had him perform field sobriety tests. They also formed the opinion that he was intoxicated. Appellant was then arrested and taken to the police station.

Appellant was Mirandized at the station, and he then made his first request to call an attorney. However, the officers informed appellant that the only phone they would allow him to use was the phone in the videotape room. Officer Mock testified that it was not the policy of the Houston Police Department to allow persons arrested for DWI to make *private* telephone calls to their attorneys. Instead, the accused must make such calls in the videotape room, and at least one police officer was to be in the room during any phone call. Appellant asked if the officers would turn off the video and audio tapes while he called his attorney. They responded that the tapes would be on and recording at all times appellant was in the room. Appellant then declined to use that phone and entered the videotape room with the officers.

In the videotape room appellant was advised that he was under arrest for suspicion of DWI and was again read his *Miranda* rights. Appellant was then required to perform several feats of dexterity, or motor skills exercise tests, and was made to read printed material. His mental and physical faculties were tested and recorded. Officer Mock then reminded appellant of the prior *Miranda* warnings and stated: "You have a right to have a lawyer present to advise you prior to and during these questions." Appellant responded: "... [I]f I feel like a question is infringing on my rights, I'll say so...."

The officer then asked several questions which appellant answered. However, when asked if he had been drinking, appellant responded: *"Now it's time for me to call my lawyer."* The following colloquy occurred:

Officer Mock: Okay. Do you want to call him now or ...?

Appellant: Sure, Sure. Unless you have another question that you'd like to ask me.

Officer Mock: Well, I have more questions. You can refuse to answer questions.

Appellant: I, I would *like* to answer that question, but, uh, if you have another question I will answer it.

Officer Mock: Okay, you *refuse* to answer questions?

Appellant: Only because I'm not sure how this ...

Appellant was interrupted at this point and the officer impatiently asked:

Officer Mock: Yeah, yeah. Well, I have these questions I need to ask you.

Appellant: Yeah, I know, I know. And I'll go on answering them, but those questions that I ...

The officer interrupted appellant again:

Officer Mock: Let me go ahead and ask them, and you tell me whether or not you want to answer them, okay? Are you under the influence of alcohol now?

The questions and answers then continued. Appellant was subsequently requested to submit a specimen to determine the alcohol concentration in his body. Appellant declined a breath test but consented to a blood test. The results of the blood test and the entire audio-video tape were introduced into evidence against appellant at trial.

■ When the accused indicates in any manner that he wants an attorney, *the interrogation must cease* until he has had an opportunity to confer with an attorney. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Ochoa v. State*, 573 S.W.2d 796 (Tex.Crim.App.1978); *Collins v. State*, 701 S.W.2d 304 (Tex.App. —Houston [14th Dist.] 1985, pet. pending). Once the accused has invoked his right to counsel, a valid waiver of that right cannot be established by merely showing that he responded to further police-initated interrogation. Unless the accused himself initiates further communication or conversation with the authorities *and* affirmatively waives his right to counsel, he may not be subjected to further interrogation by the authorities until counsel has been made available. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Coleman v. State*, 646 S.W.2d 937 (Tex. Crim.App.1983); *Evans v. State*, 659 S.W.2d 405 (Tex.Crim.App.1983). In *Edwards*, the Court held:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.... [H]aving expressed his desire to deal with the police only through counsel, *[he] is not subject to further interrogation* by the authorities until counsel has been made available to him....

*Edwards*, 451 U.S. at 484–485, 101 S.Ct. at 1884–85 (emphasis added).

While it may be argued that appellant initiated the conversation after the request to call his attorney, he did not affirmatively

waive his right to counsel. In fact, each time he tried to explain his request to call an attorney, he was interrupted by the officer. The officer let appellant know there were additional questions that he needed to ask, and the officer ignored appellant's request for counsel and continued the questioning. Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). This court has held that the interrogation must cease if the accused merely inquires *"whether* or *when"* an attorney would be appointed. *Collins v. State*, 701 S.W.2d at 305.

■ While the appellant has not assigned as error the continuation of the custodial interrogation after he affirmatively requested counsel, we find we have inherent authority to review any unassigned error in the interest that justice may best be served. *See Perry v. State*, 703 S.W.2d 668 (Tex.Crim.App.1986), and the cases cited therein. In reviewing this portion of the record, we find that appellant's request for counsel was neither indecisive nor ambiguous. Therefore, we find that the continuation of the questioning by the police, during a custodial interrogation and after a request for counsel was made, was a violation of appellant's constitutional rights. We further find the trial court committed reversible error by overruling the Motion to Suppress and in introducing the audio-video tape and the results of the blood test as evidence against appellant when they were taken *after* appellant was denied right to counsel during custodial interrogation. The fruits of the investigation initiated by the police, *after* a request for counsel was made, cannot be used against the accused. *Edwards*, 451 U.S. at 485, 101 S.Ct. at 1885.

We are fully aware of that line of cases which holds the accused has no right to counsel prior to deciding whether to submit a bodily substance for testing, and that such a specimen is not testimonial in nature and is therefore not constitutionally protected. However, those cases are distinguishable in that no *prior* right to counsel existed. Justice Campbell, writing for the court in *McCambridge v. State*, 712 S.W.2d 499 (Tex.Crim.App.1986), discusses this problem at note 18. While the *McCambridge* appeal did not involve a videotape, the Court found that, *under the facts of that case*, the appellant had no *Miranda* or *Edwards* right to counsel. The court recognized a potential problem, however, and further stated: "[W]e do not imply that a remedy will never be available to a suspect who is confused when faced with *Miranda* warnings and a breath testing decision without the benefit of requested counsel." *Id.*

Under the facts of this case, we are unable to separate the wrongful custodial interrogation from the consent for a breath or blood sample. Both are fruits of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Once the accused has made known his desire for counsel, the interrogation must cease until an attorney is present. *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1628. In *Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 2568–69, 61 L.Ed.2d 197 (1979), the Court referred to *Miranda* as a rigid rule requiring that *all* interrogation cease. Further, in *Rhode Island v. Innis*, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980), when a suspect invoked his *Miranda* right to counsel, the Court reaffirmed the "undisputed right" to remain silent and *be free of all interrogation* until the accused has consulted with his attorney. In *United States v. Recalde*, 761 F.2d 1448 (10th Cir.1985), the court found that taking a suspect to the police station in the hope of obtaining his *consent* to a search was abusive of the custodial investigation detention process. While *Recalde* was a Fourth Amendment case, the analogy of abusive custodial interrogation applies equally to a request for consent to take a blood/breath test *after* right to counsel was denied. Our sister state of Oklahoma has addressed this problem and held:

We conclude that once an individual in custody requests an attorney, interrogating officers must not seek further consentual admissions, whether in the form of confession, consent to search, or waiver of other privileges.

*Kreijanovsky v. State*, 706 P.2d 541 (Okla. Crim.App.1985).

■ We therefore hold that the request for consent to a breath/blood test was the functional equivalent of continued custodial interrogation *after* right to counsel attached and right to counsel was denied. We expressly disagree with the contention that there is an "implied consent" to submit to the blood-alcohol testing procedure so long as the statute requires that the test shall not be conducted *without the consent of the accused*.

Because we have found unassigned reversible error, we do not reach appellant's assigned grounds of error. However, in ground of error number five, appellant contends he was denied right to counsel as provided in Article 1, Section 10 of the Texas Constitution. Interestingly, this question has not been answered by the Court of Criminal Appeals; however, that court has sent two cases back to the Courts of Appeals to resolve the issue. *Forte v. State*, 707 S.W.2d 89 (Tex.Crim.App.1986) (en banc), and *McCambridge v. State*, 712 S.W.2d 499 (Tex.Crim.App.1986).

■ We also feel compelled to address another interesting aspect of this case. Due to the existing policy of the Houston Police Department, a DWI suspect is denied a *private* phone call to the attorney of his choice. Persons arrested for any other misdemeanor or felony offense are not denied private phone calls. We must protect the right of any person accused of a crime to freely and openly discuss any aspects of his case with his attorney. The accused can answer any question put to him by his attorney and find comfort in the knowledge that this communication is statutorily protected from disclosure to third parties. However, when the accused himself utters such a communication in the presence of a third party with whom no statutory protec-

tion exists, the privilege, and thereby the protection against disclosure, is lost. While we do not at this time rule on the admissibility of evidence obtained after a denial of private consultation with an attorney, or on the right to counsel prior to entering a videotape room, we believe the denial of such privacy to DWI suspects is discriminatory and tantamount to a denial of the right to counsel.

The judgment of conviction is reversed and this cause is remanded to the trial court.

DRAUGHN, Justice, dissenting.

I respectfully dissent.

Appellant was convicted of driving while intoxicated (DWI) and has presented to this court no less than fourteen grounds of error. The majority has not addressed a single complaint raised by appellant and instead has reversed the conviction on unassigned error. Specifically, the majority has held that once a suspect is in custody and has requested counsel after a *Miranda* warning is given, then all questions by police thereafter constitute impermissible custodial interrogation; this includes any request by the police that the accused submit to a breath or blood test to determine his blood-alcohol content as authorized by the Texas Implied Consent statute. Under these circumstances the majority opinion concludes that even if the accused consents to such a test, the results thereof are to be constitutionally excluded from his trial for DWI.

My reason for not joining the majority opinion is simple: I do not believe that one in appellant's position has either a constitutional or statutory right to counsel on the question of deciding whether to consent to a chemical breath or blood-alcohol test. Furthermore, much of the "video" questioning of appellant occurred prior to the request for counsel and that particular questioning which occurred afterward produced no incriminating evidence against the appellant to be suppressed. In constitutional vernacular, there were no harmful

"fruits" to suppress. In short, I disagree with the majority's conclusions concerning the unassigned error in every respect. I would, therefore, review appellant's assigned grounds of error only.

The majority opinion on unassigned error raises two separate issues as to appellant's Fifth-Amendment rights: (1) whether the Fifth Amendment even extends to appellant's consent to take an intoxilyzer test; and (2) whether the video tape should have been suppressed because of the continued questioning after appellant's invocation of his right to counsel. I believe the majority opinion's affirmative answer to these two questions reflects a misunderstanding of the developing case law concerning the right to counsel under the Fifth Amendment to the Constitution as enunciated by the United States Supreme Court and applied to Texas law by the Court of Criminal Appeals.

The U.S. Supreme Court has held that "in the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.*" *South Dakota v. Neville,* 459 U.S. 553, 564 (1983). *See also Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Our Court of Criminal Appeals has held that police officers are not required to give a suspect *Miranda* warnings prior to asking him to provide a blood sample. *Rodriguez v. State,* 631 S.W.2d 515, 517 (Tex.Crim.App. 1982). The pivotal inquiry, however, is whether the giving of the *Miranda* warning operates to extend the Fifth-Amend-

ment counsel privilege to the appellant's breath test decision. I think not.

In *McCambridge v. State,* 712 S.W.2d 499 (Tex.Crim.App.1986), the appellant made the following argument, which is somewhat similar to that found in the majority opinion:

"[A]ppellant argues that the right to counsel under *Miranda,* though not initially required, must be applied in the instant case because the police *did* inform appellant that he had a right to have counsel present during "questioning." In appellant's words "[i]t is one thing not to require the warnings be given by police because the chemical test does not equate to testimonial communication, but it is an entirely different matter where the warnings *are* given by the police, then invoked by the defendant and thereafter deliberately ignored by police." (emphasis in original.)

In rather clear language, the Court of Criminal Appeals rejected McCambridge's argument:[1]

... reading *Edwards v. Arizona, supra,* to forbid police from seeking a suspect's breath sample, once the suspect has invoked his right to counsel under *Miranda,* would similarly divorce *Miranda* from its "only source of legitimacy." Not only does the breath testing decision not involve custodial interrogation, it also does not involve the privilege against interrogation.

*McCambridge, supra.*

Another reason compels me to find that the decision to consent or refuse to take a blood test is not covered by the Fifth

---

1. In *McCambridge* the trial court had suppressed the audio portion of the videotape, finding that the police officers had continued to question appellant after he invoked his right to counsel. The video was not included in the appellate record and the Court of Criminal Appeals noted that there was nothing to indicate the officers continued questioning constituted an interrogation within the meaning of *Miranda or that the questions resulted in any incriminating response by appellant.*

The majority has referred to footnote 18 in *McCambridge* which makes the statement that the court is limiting its holding to the facts and

does not intend to imply that a remedy will never be available to a suspect who is confused when faced with *Miranda* warnings and a breath-testing decision without the benefit of counsel. A review of the video clearly shows that appellant was *not* confused by the *Miranda* warning as he repeatedly stated that he understood his rights. Therefore, I think the majority's reliance on this footnote is misplaced and contravenes the many case holdings cited in *McCambridge.* Finally, I do not think this case is sufficiently dissimilar to *McCambridge* to warrant a different result.

Amendment. I disagree with the assertion in the majority's opinion that there is no implied consent involved in the Texas statute concerning the taking of breath and blood alcohol tests. I agree with the strong line of cases interpreting the DWI statute, ours or similar enactments in other states, as creating an implied consent to the test. Indeed, the Texas statute makes reference in both its title and body to implied consent. Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5 (Vernon Supp.1986). Clearly, when one operates a motor vehicle upon the public highways of this State he shall be subject to the provisions of this Act, and shall be *"deemed to have given consent* to submit to a breath or blood test to determine the alcohol concentration in his body." The statute does allow, for practical reasons concerning physical coercion, that one may statutorily refuse to take the breath or blood tests. However, refusal to consent will subject the suspect to the penalty of having his driver's license suspended, and that of having such refusal admitted into evidence against him at a subsequent trial for DWI. For a thoughtful and exhaustive analysis in this regard, see the Court of Appeals decision in *McCambridge v. State,* 698 S.W.2d 390 at 395–97 (Cohen, J., concurring).

In summary, there is a penalty-laden, statutorily-based option to refuse a breath or blood-alcohol test, but there is no protected *constitutional right* to do so. It follows that there is no right to the assistance of counsel in the making of that decision. I find that the trial court did not err in refusing to suppress the results of the blood test to which appellant consented after receiving specific statutory warnings pursuant to Article 6701*l*–5 Sec. 2(b) concerning the effect of such refusal. Accordingly, it is necessary to determine the second issue as to whether the trial court erred in similarly not suppressing the video tape.

As pointed out in the majority opinion, all questioning did not cease once appellant invoked his right to counsel. My review of the video tape reveals (1) that much of the video occurred before this request for counsel was made, and (2) that the subsequent questioning, even if considered custodial interrogation within the meaning of *Miranda,* resulted in no incriminating responses by appellant. Therefore, I fail to see what harmful testimony the trial court should have suppressed. Constitutionally speaking, the error, if any, was harmless. There were no meaningful "poisonous-tree" fruits to suppress.

Finally, there is some language in the majority's opinion concerning appellant's Sixth-Amendment right to counsel. Because many other courts have carefully addressed the right to counsel as it concerns one in appellant's position, I find it unnecessary to repeat the same here. Suffice it to say, that because no formal charges were initiated against appellant at the time he requested an attorney, the Sixth-Amendment right to counsel did not attach. *See, e.g., Moran v. Burbine,* —— U.S. ——, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986); *Maine v. Moulton,* —— U.S. ——, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *McCambridge v. State, supra; Forte v. State,* 707 S.W.2d 89 (Tex.Crim.App.1986).

Finding no violation of appellant's Fifth-Amendment rights, I dissent from the majority's opinion grounded on unassigned error, and would review appellant's assigned errors.