Christopher Henley
GRANBERRY, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–85–815–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 18, 1987.

Jim E. Lavine, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy E. Taft, David L. Singer, Asst. Dist. Attys., Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

CANNON, Justice.

On motion for rehearing, we withdraw our opinion of March 12, 1987 and substitute this opinion.

This is an appeal from a bench trial. The court found appellant, Christopher Henley Granberry, guilty of the misdemeanor offense of driving while intoxicated and assessed punishment at 120 days in the Harris County Jail, probated for two years,

plus a $250.00 fine. Appellant's complaint focuses on the trial court's denial of his motion to suppress the results of the breath test and the video portion of the videotape made of him at the police station after his arrest. In three points of error, appellant contends that the action of the court below violated his right to counsel guaranteed by the Sixth and Fourteenth Amendments; his right to remain silent during custodial interrogation after requesting counsel guaranteed by the Fifth and Fourteenth Amendments; and his right to due process guaranteed by the Fourteenth Amendment and by article 1, section 19 of the Texas Constitution. We find no error and, therefore, affirm the judgment of the court below.

On June 22, 1985, appellant, an eighteen-year-old man, was arrested for driving while intoxicated. He was taken to the police station where he was videotaped while performing certain coordination exercises. He then took a breath test, which revealed a .19 alcohol concentration in his breath. Appellant filed a motion to suppress the videotape and the results of the breath test. The court granted the motion with respect to the audio portion of the videotape pertaining to all interrogations that did not relate to the conducting of the field sobriety tests on the videotape. The court denied the motion with respect to the video portion of the videotape; also, with respect to the audio portion of the tape wherein the officer requested performance of the field sobriety test; and further, with respect to the results of the breath test.

In order to address the issues presented on appeal, we will first review the events as they occurred on the videotape made at the police station. We will then engage in a step-by-step application of the law to the facts as they occurred.

The videotape began with appellant entering the videotaping room at the police station. An officer in the room began introducing the other officers in the room. Appellant interrupted and asked, "Can I call my lawyer?" He was told, "Wait a minute." The officer finished his introductions and then informed appellant that he

was being videotaped. The officer next read appellant his *Miranda* warnings, stopping after each warning to ask appellant if he understood what was just read. Appellant indicated that he did. After reading the warnings, the officer then informed appellant that he could call a lawyer. Appellant asked if he could call his father because he did not know who his lawyer was. Appellant was told "no" and that he could call his father later. He was also told that he could use the phone book to find a lawyer. Appellant then asked, "What do I have to do here now?" The officer requested him to perform and, he in fact did perform, various physical coordination tests. He also read a passage from a piece of paper at the officer's request.

After these tests were performed, appellant was again read his *Miranda* rights. While the officer was reading the rights, the following conversation ensued:

OFFICER: You have the right to terminate this interview at any time.

APPELLANT: I will terminate it now.

OFFICER: You want to terminate it right now?

APPELLANT: No. Keep advising me, but I won't say anything.

OFFICER: Well, that's all your legal rights.

APPELLANT: That's it?

OFFICER: That's it.

APPELLANT: O.K.

OFFICER: O.K.? Now, with those rights in mind, will you waive those rights and answer a few questions for me?

APPELLANT: Would you consider me undrunk from the test here?

OFFICER: I don't judge this.

APPELLANT: What is this?

OFFICER: This is just a series of tests that we place you through.

APPELLANT: Would you consider me more than average?

OFFICER: More than average drunk?

APPELLANT: Yeah.

APPELLANT: I asked you a question.

OFFICER: No, I don't think so.

APPELLANT: Am I drunk?

OFFICER: Well, that's not for me to prove at this time.

APPELLANT: Well, you tested me here. Did I pass all the tests?

OFFICER: Yeah, you did fine.

OFFICER: Now, Mr. Granberry, will you waive those rights I just read to you and answer a few questions?

APPELLANT: If you ask me the right questions.

At this point in the conversation, the officer began to question appellant. Some of the questions were inculpatory, such as, "Have you been drinking?"; "What were you drinking?"; "How many beers did you have?"; and "Are you under the influence of alcohol now?" At one point, the officer asked, "Where were you last, at the friend's house?" Appellant responded, "I refuse to say." The questioning continued and appellant continued to respond.

After appellant answered these questions, the officer read the DWI statutory warnings and explained them to appellant. He asked if appellant was willing to submit to a breath test; appellant agreed. After the videotape interview had terminated and appellant was leaving the videotaping room to take the breath test, he asked, "Can I call my lawyer or something?" Appellant was told that he had not asked to call a lawyer; he had asked to call his father. Subsequently, appellant took the breath test, which revealed a .19 alcohol concentration in his breath.

■ We note at the outset that appellant's Sixth and Fourteenth Amendments right to counsel was not violated. The right to counsel under the Sixth Amendment attached only upon or after formal initiation of judicial proceedings. *McCambridge v. State*, 712 S.W.2d 499, 502 (Tex. Crim.App.1986); *Forte v. State*, 707 S.W.2d 89, 92 (Tex.Crim.App.1986). Here, the videotape and the breath test were taken prior to the filing of the complaint. Appellant's right to counsel did not attach until the time the complaint was filed. Consequently, appellant's right to counsel under the Sixth and Fourteenth Amendments was not violated. Point of error two is overruled.

In his first point of error, appellant asserts that he was denied his right to remain silent during custodial interrogation after requesting counsel under the Fifth and Fourteenth Amendments. As the court held in *Miranda:* "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 473–474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966). Thus, we must decide whether appellant exercised his right to remain silent by requesting an attorney or waived this right.

■ When appellant first walked into the videotaping room, he asked, "Can I call my lawyer?" The officer then read appellant his *Miranda* warnings and told appellant that he could call an attorney. However, he did not do so, nor did he even attempt to do so. Instead, he asked to call his father to find out who his attorney was. We do not regard an adult's request to call his father as a request to call an attorney. Appellant was told that he could call an attorney. Rather than calling an attorney, appellant asked, "What do I have to do here now?"

■ Further, at the point in time when appellant received his *Miranda* warnings, he was still not subjected to custodial interrogation. Instead, he was asked to perform certain coordination tests that were nontestimonial in nature. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Because *Miranda* only applies to custodial interrogation, any violation of *Miranda* may only be used to exclude verbal testimony. *See McCambridge*, 712 S.W.2d at 504.

■ After performing the coordination tests, appellant was again read his *Miranda* rights. While the officer was "mirandizing" appellant for the second time, the officer stated, "You have the right to terminate this interview at any time." Appellant replied, "I will terminate it now." Thus, we must address the question of whether this statement was sufficient to invoke appellant's right to remain silent

such that any continued interrogation resulted in a violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). If we find an *Edwards* violation, then we must apply the rule of law announced in *Jamail v. State,* 713 S.W.2d 776 (Tex.App.—Houston [14th Dist.] 1986, pet. pending).

At the time appellant asked to terminate the interview, the officer was still in the process of "mirandizing" appellant. No custodial interrogation had began. When the officer asked, "You want to terminate it now?", appellant replied, "No. Keep advising me, but I won't say anything." The officer told appellant that that was all he had (with respect to reading appellant his rights). The officer then asked appellant if he would waive those rights and answer a few questions. Appellant responded, "If you ask me the right questions." If appellant had responded to this question by saying "no" or by indicating a desire for counsel and custodial interrogation had nevertheless continued, an *Edwards* violation would have occurred. However, because appellant indicated his approval to be questioned, he encouraged the further questioning by the officer. *See Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). Consequently, we find no *Edwards* violation and thus *Jamail* is inapposite here.

■ At the conclusion of the custodial interrogation, the officer gave appellant the DWI statutory warnings pursuant to Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5, § 2 (Vernon Supp.1987). He then asked appellant if he would take a breath test. Appellant agreed. When preparing to leave the videotaping room to take the breath test, appellant inquired, "Can I call a lawyer or something?" This request for counsel came too late to exclude the responses given during the custodial interrogation. Further, at this point appellant had no Fifth Amendment right to request counsel prior to taking the breath test. *Rodriguez v. State,* 631 S.W.2d 515, 517 (Tex.Crim.App. 1982). Consequently, the court was correct in denying suppression of the breath test results. Moreover, we find no error in denying suppression of the video portion of the videotape. A soundless videotape is not testimonial in nature and hence, no Fifth Amendment rights were violated. Point of error one is overruled.

We note that during oral argument, appellant requested that we consider whether appellant's right to counsel under article I, section 10 of the Texas Constitution was violated. Because this point was not raised in appellant's brief, we decline to do so.

In point of error three, appellant argues that his due process right to communicate with counsel under the Fourteenth Amendment of the United States Constitution and under article I, section 19 of the Texas Constitution was violated. Appellant failed to present this argument to the trial court in his motion to suppress. Thus, it is not properly before us for review. Point of error three is overruled.

The judgment of the court below is affirmed.

SEARS, Justice, dissenting.

For the reasons previously expressed by this court in *Jamail v. State,* 713 S.W.2d 776 (Tex.App.—Houston [14th Dist.] 1986, pet. pending), I respectfully dissent from the majority opinion.

At the outset, we must recognize that the treatment of a person charged with D.W.I. differs from the treatment of a person charged with any other crime. That significant difference is that a D.W.I. defendant is required to prove the elements of the offense with which he is charged in the D.W.I. indictment, to wit: "... not having the normal use of his mental and physical faculties ..."

When requiring the D.W.I. suspect to perform certain feats of physical dexterity and to read from a printed sheet of paper, the police are doing so for the sole purpose of using the video and audio tape against the accused in a subsequent trial on the charge of driving while intoxicated. There can be no reasonable belief that the performance by an accused in the videotape room is for *investigative* purposes.

Prior to entering the videotape room, a D.W.I. suspect has been found to be intoxicated by the arresting officer or officers. The normal procedure in Harris County is for the arresting officers to then call a special D.W.I. task force composed of supervisory personnel who also make an on the scene determination as to the accused's state of intoxication. The accused is interviewed and observed, by way of field sobriety tests and a series of questions and answers, by two to four or more police officers prior to a determination being made that the accused is intoxicated. Only after making a determination that the accused is intoxicated, and only after arresting the accused for suspicion of driving while intoxicated, is the accused brought into the videotape room.

The adversary process has commenced.

The tests performed in the videotape room had no probative or investigative value in determining whether the accused would be formally charged with driving while intoxicated. That determination had been made *prior* to the time Appellant entered the videotape room. Further, Appellant herein inquired if the officer thought he was drunk or if he had passed the test and the officer replied: "You did fine, you really did." The officer then told Appellant he would be placed in jail immediately if he refused to take a breath test.

Where the tests performed by Appellant had no relevance to whether he would be charged with a crime, and where Appellant was not able to "pass" the test and avoid prosecution, *the State had already committed itself to prosecute.* Therefore, this was a "critical stage of prosecution" and Appellant had a right to counsel. *United States v. Wade,* 388 U.S. 218, 237, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967).

When we recognize the *true* nature and purpose of the videotape room, and recognize that Appellant was not a "suspect" as that term may be used in the investigation of burglaries, rapes, murders, etc., but was indeed the man caught driving a vehicle and was actually under arrest for D.W.I., we must come to the inescapable conclusion that he was *in police custody and undergoing interrogation.* Therefore, Appellant had a Fifth Amendment right to be assisted by counsel during such interrogation. *Miranda v. Arizona,* 384 U.S. 436, 469–74, 86 S.Ct. 1602, 1625–27, 16 L.Ed.2d 694 (1966). Furthermore, once an accused invokes his Fifth Amendment right to counsel, it remains in effect as long as he is in continuous police custody. *United States v. Moschiano,* 695 F.2d 236 (7th Cir.1982), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983). *See also Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

The majority opinion makes the erroneous conclusion that Appellant's right to counsel did not attach during the videotape or the breath test because both were taken prior to the filing of the complaint. The majority reasons that the right to counsel under the Sixth Amendment attaches only upon or after formal initiation of judicial proceedings, and cites *McCambridge v. State,* 712 S.W.2d 499, 502 (Tex.Crim.App. 1986) and *Forte v. State,* 707 S.W.2d 89 (Tex.Crim.App.1986). However, the Sixth Amendment right exists when an individual *"becomes the accused." Escobedo v. Illinois,* 378 U.S. 478, 485, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977 (1964). Further, the *McCambridge* opinion recognized that a due process or *Miranda* violation could occur when police "mix" a breath test request with custodial interrogation. *McCambridge v. State,* 712 S.W.2d 499, 506 n. 17 (Tex.Crim.App.1986). Here, there was no break between the custodial interrogation of Appellant and the request that he submit to a breath test. Therefore, the police impermissibly "mixed" a breath test request with a continuation of police custody and custodial interrogation after Appellant's Fifth and Sixth Amendment rights to counsel had attached and were denied or ignored.

I submit that there is no more critical time in the processing of a D.W.I. suspect than when the State uses video and audio tapes to prove the elements alleged in the indictment. Once a person has been arrested for D.W.I., *the filing of a formal complaint will inevitably follow.* How then

can we allow the State to delay the filing of a formal complaint in order to audio and videotape the accused performing acts which prove the elements of the offense with which he is charged. It is clear that we would not allow the State to engage in a procedure that would require a person accused of any other felony to perform acts in a videotape room when those very acts would prove the elements of the offense with which he was charged. This would not be allowed whether it occurred prior to or subsequent to the formal filing of the complaint. Further, it could not be allowed while the accused was denied right to counsel.

Although we are deeply embroiled in a serious battle to prevent the loss of life and serious bodily injury caused by persons driving while intoxicated, we must nonetheless vigorously oppose any infringements on the constitutional rights of those so accused.

The majority opinion holds that once warnings have been given, the subsequent procedure is clear, i.e.: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 473–474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966). However, the majority concludes that Appellant did not request an attorney but instead asked to call his father; and alternatively, the majority concludes that Appellant was not subjected to custodial interrogation. The majority must not have been aware that Appellant was *arrested* prior to being required to enter the videotape room. The Appellant was not a suspect, he was the *accused.*

A review of the videotape reveals that as Appellant was entering the room he said, "Can I call my lawyer?" The interviewing officer did not respond but started introducing the other police officers present in the videotape room. Appellant again asked, "Can I call my lawyer?" Again, the interviewing officer disregarded his request and asked him to wait until he concluded his introductions. The officer then completed his introductions, advised Appel-

lant that he was under arrest and *Mirandized* Appellant. At the conclusion of the *Miranda* warnings Appellant asked, "Can I call my father?" When asked if he understood what the officer had just told him, Appellant replied, "Yes, sir, can I call my father to see who my lawyer is?" (Appellant was age 18 at the time of his arrest.) The officer ignored the question and continued with a reading of Appellant's rights.

The officer later advised Appellant, "You have a right to have a lawyer appointed during any questioning." Appellant responded, "Is this questioning?" The officer asked if Appellant understood, and Appellant responded, "Yes, but is this questioning?" Finally, the officer told Appellant that he could call his attorney but that an *attorney only* could be called from that room. Appellant responded that he did not know who his attorney was but would like to call his father to call an attorney. At that point, another officer responded, "You'll be allowed personal phone calls later, we have limited time here." Appellant again stated that he did not know who his attorney was. He was then told he could use the phone book. Appellant again asked, "Can I call my father?" and he was told that he could call when he got "across the street."

Appellant then performed the feats of physical dexterity requested of him after which the officer again read Appellant the *Miranda* rights. The officers stated, "You have a right to terminate this interview at any time." Appellant responded, *"I will terminate now."* The officer responded, "You want to terminate it now?" Appellant stated, "No, keep *advising* me, but I won't say anything." After that a colloquy occurred between the officer and Appellant wherein Appellant asked the officer if he considered him drunk or if he had passed the test, to which the officer responded, "You did fine, you really did." The officer then immediately asked, *"Now* will you waive those rights and answer questions." Appellant responded, "If you ask the right questions."

The majority opinion concludes that when Appellant asked to terminate the in-

terview, no custodial interrogation had begun because the officer was still in the process of *Mirandizing* Appellant. The majority recognizes that Appellant did ask to terminate the interrogation, but they take his statement "Keep advising me" as an invitation to "keep interrogating" him.

Appellant unequivocally exercised his right to call an attorney and he exercised his right to terminate the questioning. However, instead of terminating the questioning as required by *Miranda* and by *Edwards*[1] the officer calmed Appellant's fears by telling him that he "did fine" on the tests and then continued to ask him questions such as: "Were you driving"; "were you drinking"; "were you in an accident"; "how many beers did you drink"; and, "are you under the influence of alcohol now?" The officer then advised Appellant that he was under arrest for D.W.I. which prompted additional questions on the part of Appellant. The officer responded, "I'm getting tired of your silly questions." Appellant stated, "But I don't understand my rights."

The officer next asked Appellant if he would take a breath test and advised him that if he didn't he would go to jail immediately. Appellant asked if he could call his lawyer before he took the test, and the police replied, "We gave you that chance earlier but all you wanted to do was call your dad." Appellant then consented to the taking of a breath test.

It is my opinion that the Appellant was under arrest, that everything occurring in the videotape room occurred during custodial interrogation, that Appellant was advised of his rights to counsel but his attempts to obtain counsel were denied or ignored by the police, that Appellant terminated the custodial interrogation and the Houston Police Department continued the interrogation, and, that Appellant's rights pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 19 of the Texas Constitution were violated. Therefore, the

judgment of the trial court should be reversed.

---

**1.** *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).