**Edward Earl FORTE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 387–85.

Court of Criminal Appeals of Texas, En Banc.

April 9, 1986.

Richard Alley, Fort Worth (Court-appointed), for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S AND STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted by a jury of driving while intoxicated. Punishment was assessed at confinement in jail for 30 days and a fine of $200.00.

The Second Court of Appeals reversed appellant's conviction, holding that appellant was denied a limited right to counsel prior to making a decision whether to provide a breath sample for an intoxilyzer test

for alcohol concentration. *Forte v. State*, 686 S.W.2d 744, 745 (Tex.App.—Fort Worth 1985) (Opinion on Rehearing). The Court of Appeals rejected appellant's remaining grounds of error, including a facial attack upon Article 6701*l*–1(a)(2)(B), V.A.C.S. (Supp 1984), as unconstitutionally creating an "irrebuttable" presumption of intoxication. *Id.*, at 748.

The State and appellant presented separate petitions for discretionary review to this Court. We granted the State's petition to determine whether a person arrested for suspicion of driving while intoxicated has a limited right to counsel, under the Sixth Amendment to the U.S. Constitution, prior to providing a breath sample for an alcohol concentration test. We also granted appellant's petition to determine whether Article 6701*l*–1(a)(2)(B), supra, unconstitutionally creates an "irrebuttable" presumption of intoxication. We will reverse in part and affirm in part and remand.

On January 10, 1984, appellant, while driving his car on a public road, weaved back and forth across the road, ran a stop sign and collided with another car. Appellant drove away from the scene of the accident but shortly became stuck in a ditch after losing control of his car. A driver who had observed the incident notified the police by phone.

An investigating officer, Lt. Crawford, responded to the call and arrested appellant for suspicion of driving while intoxicated. Lt. Crawford smelled alcohol on appellant's breath, heard appellant slur his speech, and saw appellant unable to stand without support. Lt. Crawford also found an empty wine bottle and a partially empty whiskey bottle in appellant's car and noticed appellant's pants had an open fly and a dark area in the crotch.

Appellant was transported to Forest Hill city jail, where he was given *Miranda* warnings.[1] After also explaining to appellant the consequences of refusing to submit to a breath test for alcohol concentration, see V.A.C.S., art. 6701*l*–5, § 2(b), Lt. Crawford then asked appellant to provide a

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

sample of his breath. Appellant agreed to provide the sample. Lt. Crawford then took appellant to the Fort Worth city jail for administration of an intoxilyzer test. (Forest Hill city jail did not have an intoxilyzer unit.)

At the Fort Worth city jail, appellant again received *Miranda* and "breath test" warnings and agreed to take the breath test. After some delay, unexplained in the record, appellant was given a third set of warnings. This time appellant requested an attorney; however, his request for an attorney was not honored. He then agreed, for a third time, to give a sample of his breath. A sample was taken, and the intoxilyzer test showed an alcohol concentration of 0.10%. The next day, January 11, 1984, appellant was formally charged with the offense of driving while intoxicated.

### I. Right to Counsel.

The Court of Appeals held that appellant's decision whether to provide a breath sample for an alcohol concentration test [2] was a "critical pretrial stage" that triggered a limited right to counsel. *Forte,* supra, at 754. In reaching its decision, the Court of Appeals quoted *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1157 (1967), for the proposition that the right to counsel can attach "at any stage of the prosecution, formal or informal, in court or not, where counsel's absence might derogate from the accused's right to a fair trial." *Forte,* supra, at 752. Although the opinion of the Court of Appeals does not specifically mention a particular federal or state constitutional provision, given its reliance upon *United States v. Wade,* supra, it is clear that the decision was based upon the Sixth Amendment.[3] Indeed, we granted the ground of review in the State's petition that was posited solely on the Sixth Amendment.

■ The State argues that a defendant's Sixth Amendment right to counsel does not attach until formal criminal proceedings have been initiated against him, citing *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) and *Moran v. Burbine,* — U.S. —, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). The State further argues that the "critical" stage analysis of *United States v. Wade,* supra, only applies to situations that occur after the right to counsel has attached. We agree with both analyses.

In 1984, the Supreme Court revisited its decisions regarding when the Sixth Amendment right to counsel attaches and concluded that "our cases have long recognized that the right to counsel attaches *only at or after* the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia,* 467 U.S., at 187, 104 S.Ct., at 2297 (placement of prisoner in administrative segregation prior to initiation of adversary judicial proceedings does not entitle him to appointment of counsel). That conclusion essentially gave majority approval to an earlier plurality opinion of the Court in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411

**2.** The decision of a defendant to provide a breath sample is implicitly found in Article 6701 *l*–5, supra. After noting that any person operating a motor vehicle upon public highways or beaches has consented to providing a blood or breath sample for alcohol concentration testing, Article 6701*l*–5, § 1, supra, provides:

> The specimen, or specimens, *shall be taken* at the request of a peace officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways or upon a public beach in this state while intoxicated.

However, Article 6701*l*–5, § 2, supra, also provides:

> Except as provided by Subsection (i) of Section 3 of this Act, if a person under arrest refuses, upon the request of a peace officer, to give a specimen designated by the peace officer as provided by Section 1, *none shall be taken.*

We need not decide in the instant case whether this decision to refuse is characterized as a "legal right" or merely a "physical power." (All emphasis is supplied by the author of this opinion unless otherwise indicated.)

**3.** "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend VI.

(1972). See *United States v. Gouveia,* 467 U.S., at 187, 104 S.Ct., at 2297–98 (approving language from *Kirby v. Illinois*). In *Kirby v. Illinois,* supra, the Supreme Court concluded that the Sixth Amendment right to counsel attaches only upon or after formal initiation of judicial proceedings.[4]

Appellant argues that earlier Supreme Court decisions suggest that a stage may be characterized as critical prior to the formal initiation of judicial proceedings, thus triggering the right to counsel under the Sixth Amendment. See *United States v. Gouveia,* 467 U.S., at 192, 104 S.Ct., at 2300 (Stevens, J., and Brennan, J., concurring) (prior cases do "not foreclose the possibility that the right to counsel might under some circumstances attach prior to the formal initiation of judicial proceedings...."). Specifically, appellant argues that *United States v. Gouveia,* supra, does not foreclose such a possibility in the instant case. We disagree.

The Supreme Court has only deviated from the bright line rule established for attachment of the Sixth Amendment right to counsel in two prior cases: *Miranda v. Arizona,* supra, and *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). *United States v. Gouveia,* 467 U.S., at 188, n. 5, 104 S.Ct., at 2298, n. 5. However, the constitutional foundation for the decisions in both *Miranda* and *Escobedo* has since been limited to the Fifth Amendment. *Id.; Moran v. Burbine,* — U.S., at —, 106 S.Ct., at —. Thus, in no case has the Supreme Court extended the Sixth Amendment right to counsel to a scenario that occurred prior to initiation of adversary judicial proceedings. Compare, e.g., *United States v. Wade,* supra (Sixth Amendment right to counsel attaches at post-indictment lineup) with *Kirby v. Illinois,* supra (Sixth Amendment right to counsel does not attach at pre-indictment lineup).

▮ Furthermore, the Supreme Court recently rejected the notion that a "critical" stage can occur prior to initiation of judicial

proceedings and crystallized its position as to when the Sixth Amendment right to counsel attaches:

> As *Gouveia* made clear, until such time as the " 'government has committed itself to prosecute, and ... the adverse positions of government and defendant have solidified' " the Sixth Amendment right to counsel does not attach. *United States v. Gouveia,* supra, at 189 [104 S.Ct. at 2298] (quoting *Kirby v. Illinois,* 406 U.S., at 689 [92 S.Ct., at 1882].).

*Moran v. Burbine,* — U.S., at —, 106 S.Ct., at — (interrogation prior to indictment does not raise Sixth Amendment right to counsel, regardless of "critical" nature of the pretrial event). See also *Michigan v. Jackson,* — U.S. —, —, 106 S.Ct. 1404, 1409, 89 L.Ed.2d —, n. 5 (1986) (Sixth Amendment provides right to counsel at a "critical stage" *after initiation of adversary judicial proceedings*); *Dunn v. State,* 696 S.W.2d 561, 565 (1985), cert. denied, — U.S. —, 106 S.Ct. 1478, 89 L.Ed.2d 732 (1986) ("mere arrest and subsequent questioning" does not trigger Sixth Amendment right to counsel). These holdings make it clear that our determination whether appellant's Sixth Amendment right to counsel was denied in the instant case depends upon when formal adversary proceedings were initiated.

Appellant was arrested and given a breath test on January 10, 1984. A formal complaint, asserting that appellant was driving while intoxicated, was not filed until January 11, 1984. Appellant's right to counsel did not attach until the time the complaint was filed. Therefore, we find no denial of appellant's Sixth Amendment right to counsel.

Appellant argued to the Court of Appeals that his right to counsel under state law was also denied. Tex. Const. art. I, §§ 3, 10, & 19; Articles 1.04, 1.05, 38.23, V.A.C.C.P. Because the Court of Appeals decided the case only on federal constitutional grounds, we will remand the case for

---

**4.** Adversary judicial proceedings can be initiated "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.,* at 689, 92 S.Ct. at 1882.

consideration of remaining state law grounds. See *Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Cr.App.1984). However, we must first determine whether appellant's ground of review challenging the constitutionality of Article 6701*l* –1(a)(2)(B), supra, rejected by the Court of Appeals, has merit.

II. Irrebuttable Presumption.

Appellant argues that the new drunk driving statute (Art. 6701*l* –1(a)(2)(B), supra), by allowing conviction of a defendant upon presentation of proof that he had an alcohol concentration of 0.10% or more at the time of arrest, creates an unconstitutionally "irrebuttable" presumption of intoxication.[5] In effect, appellant argues that the constitutional requirement that the State prove each element of an offense beyond a reasonable doubt[6] has been circumvented by the legislative creation of a mandatory conclusive presumption of intoxication once the result of a chemical test for alcohol concentration has been offered into evidence by the State.[7]

A significant alteration in the definition of "intoxication" has recently occurred as a result of legislative action relating to the offense of driving while intoxicated. Prior to January 1, 1984, driving while intoxicated was committed if: 1) a person drove or operated a motor vehicle upon any public road or highway, and 2) while such person was intoxicated or under the influence of intoxicating liquor. Speed and Driving While Intoxicated, ch. 682, § 3, 1979 Tex. Gen.Laws 1608, 1609, amended by Act of June 16, 1983, ch. 303, § 3, 1983 Tex.Gen. Laws 1568, 1574–75. Evidence of intoxication was usually provided through eyewitness testimony or chemical tests given to a defendant for alcohol concentration. Under the laws then in effect, scientific evidence that a defendant had 0.10% or more alcohol concentration in his blood at the time of arrest created a presumption that the defendant had been under the influence of intoxicating liquor when driving. Driving While Intoxicated, ch. 709, § 1, 1971 Tex.Gen.Laws 2340, 2341, amended by, Act of June 16, 1983, ch. 303, § 4, 1983 Tex.Gen.Laws 1568, 1581–82. This presumption of intoxication was not mandatory and did not have to be accepted by the trier of fact. It could be rebutted by a defendant or disregarded as insufficient proof of intoxication. If the jury was the trier of fact, then it was instructed on the law in both of these respects. *Eckman v. State*, 600 S.W.2d 937 (Tex.Cr.App.1980); V.T.C.A., Penal Code, § 2.05.[8]

---

**5.** Although appellant refers to the presumption as "irrebuttable," the Supreme Court has adopted the phrase "mandatory conclusive" presumption. See *Francis v. Franklin*, 471 U.S. —, —, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 353, 354 (1985). In defining this phrase, the Supreme Court has stated: "A mandatory presumption instructs the jury that it *must* infer the presumed fact if the State proves certain predicate facts." *Id.* "A [mandatory] *conclusive* presumption removes the presumed element from the case once the State has proven the predicate facts giving rise to the presumption." *Id.*, at n. 2.

**6.** See *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970) (Due Process Clause requires reasonable doubt standard in criminal prosecutions).

**7.** Appellant does not point to any particular constitutional provision in support of his claim that he was subjected to a mandatory conclusive presumption. Instead, he merely provides, in his brief, a string cite to U.S. Const. amends. V, VI, XIV; Tex.Const. art. I, §§ 3, 10, & 19. The Court of Appeals, without making any distinc-

tion between each of the provisions cited by appellant, rejected all of appellant's state and federal constitutional grounds of error on this issue. *Forte*, supra, at 747–48. However, appellant also cites to *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 2225, 60 L.Ed.2d 777, 792 (1975) and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) in support of his argument. Those decisions held that mandatory presumptions "violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense." *Francis v. Franklin*, supra. Presumably, then, appellant is relying upon federal and state due process requirements.

**8.** This presumption, in effect, allowed the jury to make a permissive inference. See *Francis v. Franklin*, — U.S., at —, 105 S.Ct., at 1971 ("A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion."). Due process concerns are only raised with this type of presumption "if

In 1983, the Legislature amended the law and provided that driving while intoxicated was an offense if a defendant drove or operated a motor vehicle in a *public place* while intoxicated. V.A.C.S., art. 6701*l*–1(b) (Supp.1984). Additionally, the definition of "intoxication" was broadened to include:

> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; *or*
>
> (B) *having an alcohol concentration of 0.10 percent or more.*

V.A.C.S., art. 6701*l*–1(a)(2) (Supp.1984).[9]

This extension of the definition of "intoxication" replaced the former singular definition with two alternative definitions. One of those alternatives created a new definition of "intoxication" based upon alcohol concentration of 0.10% in the body. Article 6701*l*–1(a)(2)(B), supra (emphasized above). This definition effectively abolished the former presumption of intoxication based on an alcohol concentration of 0.10% or more in a defendant's body. Intoxication, instead, now *means* the presence of 0.10% or more alcohol concentration in a defendant's body. Appellant bases his claim of a mandatory conclusive presumption on this change in the law.

■ In its reply to appellant's petition for discretionary review, the State persuades us that Article 6701*l*–1(a)(2)(B), supra, does not create a mandatory conclusive presumption of intoxication, viz:

> Appellant overlooks the fact that under the current version of the DWI law the legislature is not asking that one fact be presumed from another fact. *It is merely defining the crime differently.*

The legislature has made a judgment that people should not drive cars if their alcohol concentration is .10% or more even though some small number of drivers could perhaps drive safely at that level. This is no different from a legislative decision that drivers should never exceed 20 m.p.h. in a school zone during certain hours of the day even if the driver cannot see any children in the area, or that drivers must stop at stop signs even though the intersection could not interfere with other vehicles or pedestrians.

We agree with this analysis and find that appellant misinterprets the effect of 6701*l*–1(a)(2)(B), supra. By redefining the offense of driving while intoxicated, so that "intoxication" now can consist of an alcohol concentration of 0.10% or more, the legislature decided to avoid its previous use of a presumption and, instead, made an alcohol concentration of 0.10% or more an *element* of the offense.

■ Currently, no presumption of intoxication is even mentioned in Article 6701*l*–1(a)(2)(B), supra. And, certainly, no "mandatory conclusive" presumption of intoxication is codified. To prove the element of intoxication in a prosecution for the offense of driving while intoxicated, the State must offer proof beyond a reasonable doubt as to that element. To be sure, if the State relies upon the 0.10% definition of intoxication, then such proof will normally appear in the form of a chemical test showing the alcohol concentration in a defendant's body *near the time of the offense.* However, a conviction will not necessarily follow from the offer of such a test. First, the trier of fact must still be convinced beyond a reasonable doubt that the chemical test provides trustworthy evidence of

---

the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.*

**9.** The word "percent" was removed from Article 6701*l*–1(a)(2)(B), supra, in 1985. Acts, March 28, 1985, ch. 10, 1985 Tex.Sess.Laws Serv. 19 (Vernon). See also V.A.C.S., art. 6701*l*–1(a)(2)(B) (Supp.1986). An alcohol concentration of 0.10 already refers to the ratio or "per-

centage" of grams of alcohol present in a given quantity of blood, breath or urine. V.A.C.S., art. 6701*l*–1(a)(1)(A)–(B), supra. Therefore, use of the term "percent" after 0.10 is, at best, redundant. However, we will continue to use the phrase "0.10 percent" in this opinion to remain consistent with the phraseology of the law in effect at the time of appellant's conviction.

alcohol concentration in a defendant's breath, blood or urine. Second, the jury must still be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had a 0.10% alcohol concentration in his body *at the time of the offense.*

Nothing prevents a defendant from challenging the validity of the test itself by attacking the reliability of the machine or the qualifications of the operator. See V.A.C.S., art. 6701*l*–5, § 3(b)–(c). See also *California v. Trombetta,* 467 U.S. 479, 490, 104 S.Ct. 2528, 2535, 81 L.Ed.2d 413, 423 (1984).[10] Nor does anything prevent a defendant from arguing that his alcohol concentration increased from the time of arrest to the time of testing. In no way does Article 6701*l*–1, supra, encourage a jury to ignore such defensive evidence on the issue of intoxication in favor of a presumption, whether mandatory or permissive.[11]

Furthermore, in examining the charge given to the jury in the instant case, we find no language suggesting to the jury that it presume intoxication simply because a chemical test is present in the case. The charge provided the jury with an instruction on the elements of the offense of driving while intoxicated and included the following definitions of "intoxication:"

A. Not having the normal use of mental or physical faculties by reason of the introduction of alcohol into his body; or

B. Having an alcohol concentration of 0.10 percent or more.

In two separate sections of the charge, the jury was also instructed that it must find all elements of the offense to have been proven beyond a reasonable doubt. The charge did not include any language requiring the jury to accept the results of a chemical test for alcohol concentration as conclusively establishing intoxication beyond a reasonable doubt at the time of the offense.

We find that the legislature, by providing a new definition for one element (intoxication) of the offense of driving while intoxicated, merely invoked its power to define criminal conduct within constitutional limits. See *Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281, 292 (1977). See also *Turpin v. State,* 606 S.W.2d 907, 912 (1980) ("Whether a particular blood alcohol level should carry the weight of a presumption is a matter for the Legislature.") Therefore, appellant's argument that Article 6701*l*–1(a)(2)(B), supra, creates a mandatory conclusive presumption is without merit.[12]

10. Appellant admits in the instant case that the testimony of one officer showed that the intoxilyzer machine used to test appellant's breath sample had a variance factor of 0.01% plus or minus what was shown on the readout. Given the presence of this sort of evidence, surely appellant can not claim that the State's offer of an intoxilyzer result of 0.10% forced the jury to reach a mandatory conclusion of intoxication. In other words, in the instant case, though the jury *could* have found the test result to be 0.09% and found appellant not to have been intoxicated, the jury also had sufficient evidence of the reliability of the intoxilyzer and overwhelming eyewitness testimony concerning appellant's demeanor to find appellant to have been intoxicated. The conviction of appellant, therefore, did not subject him to a mandatory conclusive presumption of intoxication. A different question might be presented had the test result been the sum total of the State's case. See *California v. Trombetta,* 467 U.S., at 489, n. 10, 104 S.Ct., at 2534, n. 10 (evidence might be insufficient if State's case based solely on unreliable intoxilyzer machine).

11. We agree with appellant's argument that the new definition of "intoxication" provided by Article 6701*l*–1(a)(2)(B), supra, in conjunction with a defendant's implied consent to the taking of a breath or blood test, see V.A.C.S., art. 6701*l*–5 (Supp.1986), may remove much of the opinion testimony formerly necessary to prove intoxication. In many cases, scientific evidence of a defendant's alcohol concentration may begin to replace opinion testimony as the prosecutor's preferred method of proving intoxication. However, this does not mean that the trier of fact will now be required or instructed to accept a chemical test as undeniable proof of intoxication. Appellant inaccurately characterizes the difficult task of responding to scientific evidence as an insurmountable burden tantamount to a mandatory conclusive presumption. Presentation of a strong case has never been equated with creating an impermissible presumption.

12. Several states have rejected attacks upon statutes similar to Article 6701*l*–1(a)(2)(B), supra, finding that no impermissible presumption is created by defining intoxication by reference to

The judgment of the Court of Appeals is affirmed as to its conclusion that Article 6701*l*–1(a)(2)(B), supra, is constitutional, in that it did not subject appellant to a mandatory conclusive presumption on the issue of intoxication. The judgment of the Court of Appeals is reversed as to its conclusion that appellant was denied his Sixth Amendment right to counsel. We remand this cause to the Court of Appeals for consideration of whether appellant was denied the right to counsel under Texas law.

TEAGUE, J., dissents to Part I.

CLINTON, Judge, concurring.

The opinion of the Court does not purport to be the last word on right to counsel and validity of the statute. The two conclusions reached by the Court are narrowly confined: the first to right to counsel under the Sixth Amendment and the second to a finding that the statute does not create an "irrebuttable presumption." Left open for determination by the Fort Worth Court of Appeals in the first instance is the question of right to counsel under our own Constitution and laws of Texas, and not foreclosed in the future are other challenges to validity of the statute.

As presently construed by the Supreme Court of the United States, the Sixth Amendment right to counsel attaches at or after "initiation of adversary proceedings" against an accused. In context of an accused being confronted with *Miranda* and a "request" by a peace officer that he submit to a breath test, and facing dire consequences should he refuse, the right to counsel at that stage seems to be an open question under Texas law. Today the Court quite properly defers to the Fort Worth Court of Appeals for an initial answer to that question.

Similarly, the Court leaves open for another day whether the statute is invalid for different reasons than the one advanced in this cause.

Given those considerations, I join the opinion of the Court.

a particular alcohol concentration in the body. *Cooley v. Municipality of Anchorage,* 649 P.2d 251, 255 (Alaska App.1982); *Fuenning v. Superior Court,* 139 Ariz. 590, 680 P.2d 121, 126–27 (1983); *Lovell v. State,* 283 Ark. 425, 678 S.W.2d 318, 321 (Ark.1984); *Burg v. Municipal Court,* 35 Cal.3d 257, 198 Cal.Rptr. 145, 149–50, 673 P.2d 732, 736–37 (1984), cert. denied, 466 U.S. 967, 104 S.Ct. 2337, 80 L.Ed.2d 812 (1984); *Coxe v. State,* 281 A.2d 606 (Del.1971); *Lester v. State,* 253 Ga. 235, 320 S.E.2d 142, 144–45 (1984); *People v. Ziltz,* 98 Ill.2d 38, 74 Ill.Dec. 40, 455 N.E.2d 70, 72 (1983); *State v. D'Agostino,* 203 N.J.Super. 69, 495 A.2d 915, 919 (1984) (dicta); *State v. Howren,* 312 N.C. 454, 323 S.E.2d 335, 338 (1984); *State v. Tanner,* 15 Ohio St.3d 1, 472 N.E.2d 689, 693–94 (1984); *State v. Abbott,* 15 Or.App. 205, 514 P.2d 355 (1973); *Commonwealth v. Hernandez,* 339 Pa.Super. 32, 488 A.2d 293, 300–01 (1985); *State v. Gerdes,* 252 N.W.2d 335 (S.D.1977) (dicta); *State v. Franco,* 96 Wash.2d 816, 639 P.2d 1320, 1323, 1326 (1982); *State v. Ball,* 164 W.Va. 588, 264 S.E.2d 844, 847 (1980) (dicta).