**John Roy JACOBS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 86-00666-CR.**

Court of Appeals of Texas, Dallas.

May 27, 1987.

Rehearing Denied July 28, 1987.

Discretionary Review Refused Oct. 21, 1987.

Paul R. Leake, Mesquite, for appellant.

Donald G. Davis, Dallas, for appellee.

Before STEPHENS, HECHT and THOMAS, JJ.

STEPHENS, Justice.

John Roy Jacobs was found to be guilty by a jury of the misdemeanor offense of driving while intoxicated and punishment was assessed at five days confinement and a $150 fine. Jacobs appeals by three points of error. We agree with one of his assertions and, accordingly, reverse and remand for new trial.

Jacobs was stopped by a police officer because he allegedly had a defective rear license plate light and his vehicle was weaving. Jacobs complied with the officer's request to perform certain field sobriety tests. Allegedly these tests were not completed successfully and Jacobs was transported to the Mesquite Police Department. Upon arrival, Jacobs was taken to a videoroom where his conversation with the police officer was taped. The officer informed Jacobs that he had the right to speak with an attorney. Jacobs requested that he be allowed to contact his wife; this request was denied. Subsequently, Jacobs submitted to a breathalyzer test which indicated that he had an alcohol concentration of 0.11.

In his first point of error, Jacobs contends that the trial court erred in overruling his requested charge on probable cause or the legality of the police officer's basis for stopping Jacobs' vehicle. A police officer is permitted to make a temporary investigative detention of a person if the

officer has a reasonable suspicion the person is connected with an unusual activity relating to a crime that is or has occurred. *See Stone v. State,* 703 S.W.2d 652, 654 (Tex.Crim.App.1986). Jacobs denies that he had a defective license plate light or that his vehicle was weaving at the time the police officer stopped him. This testimony contradicts that given by the police officer and raises an issue of fact concerning the officer's reasonable suspicion based on articulable facts. Jacobs objected to the court's charge because there was no instruction on the issue of probable cause for the initial stop and he submitted a suggested instruction:

> With regard to the issue of instructions about probable cause, you are instructed that before an officer is entitled to stop a moving vehicle he must have probable cause to do so. In this case it was conceeded [sic] that the only probable cause to stop the Defendant's vehicle was the fact that the Defendant allegedly had a defective light or that the Defendant was weaving. On the other hand, the Defendant has testified his vehicle did not have a defective light and that he did not weave on the occasion in question. It is for you to determine at the outset of your deliberations whether or not Defendant's vehicle had a defective tail light [sic] or the Defendant's vehicle was weaving as the officer has described and that the burden of proof on the State in this regard that you must find that the Defendant's vehicle did have a defective tail light [sic] on the occasion in question as the officer indicates beyond a reasonable doubt.
>
> In the event you are not satisfied beyond a reasonable doubt that the vehicle did not have a defective tail light [sic] as the officer testified then you will have no further evidence to consider and should bring in a verdict of acquittal.

The trial court overruled the objection and the requested instruction was not included in the charge.

This instruction is very similar to the suggested instruction submitted in *Stone,* 703 S.W.2d at 654. The Court of Criminal Appeals stated in that opinion that even though the charge was clearly incorrect, as it misstated the law and was a comment on the evidence, the trial court understood that Stone was objecting to the omission of an instruction on the officer's right to stop the vehicle. The court held that the failure to instruct the jury on this issue was reversible error, for if an issue is raised, the trial court must submit the requested charge. As the evidence supporting the officer's stop in the present case is controverted by Jacobs' testimony, it is reversible error for the trial court to have refused to instruct the jury on this issue. Jacobs' point of error one is sustained.

Although Jacobs' first point of error disposes of this case, the question raised by his third point of error may reappear in his new trial and we will, therefore, address it. Jacobs asserts in his third point of error that the trial court erred in admitting the results of his breathalyzer test because his request to consult with an attorney was denied.

The videotape of the conversation between Jacobs and the police officer shows that when Jacobs was given the *Miranda*[1] warnings, he indicated that he understood and stated, "I think I need a lawyer before I do anything else." The consequences of refusing to take the breathalyzer test were explained to Jacobs and then the officer informed him that he would be given five minutes to call his attorney, but only to call his attorney. Jacobs stated, "I would have to call my wife—that wouldn't do." The officer emphasized that the call could only be made to his attorney. Jacobs indicated that he understood, but was not sure what action he should take. He subsequently reinitiated the conversation with the officer by inquiring, "What happens if I pass it [the breathalyzer test]?" This was an intelligent and voluntary waiver of his right to counsel. *See Sorenson v. State,* 709 S.W.2d 319, 320 (Tex.App.—Texarkana 1986, no writ). Jacobs later consented to take the test by stating, "Well, I can't call

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

my lawyer.... I hate to, but I guess I will."

The sixth amendment right to counsel does not attach prior to the initiation of adversary judicial proceedings: when the government commits itself to prosecute. *Forte v. State,* 707 S.W.2d 89, 92 (Tex. Crim.App.1986). Mere arrest and subsequent questioning does not trigger the right. *Id., quoting Dunn v. State,* 696 S.W.2d 561 (Tex.Cr.App.1985). However, when the officer gave the *Miranda* warnings to Jacobs, she did not inform him that the warnings do not apply to his decision whether to provide a breath sample. This situation was recently discussed in *McCambridge v. State,* 712 S.W.2d 499, 506 (Tex.Crim.App.1986). Although there may have been some additional confusion created by the giving of the warnings, *see McCambridge,* 712 S.W.2d at 506–07, there was no *Miranda* violation because Jacobs voluntarily reinitiated the conversation after the warnings. *See Sorenson,* 709 S.W.2d at 320. We overrule Jacobs' third point of error.

The judgment of the trial court is reversed and remanded to the trial court for new trial.

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

On motion for rehearing the State insists that this court erred in its original opinion by not applying the *Almanza*[1] test.

So that no doubt will exist in the State's mind, the Court has elected to supplement its original opinion of May 27, 1987 to provide further explanation for our judgment. The original opinion is hereby ordered to be published along with this supplemental opinion.

The *Almanza* test was not applied, because the Court of Criminal Appeals, in *Stone v. State,* 703 S.W.2d 652 (Tex.Crim. App.1986) (en banc), the case upon which this Court relies in its original decision, and a case decided after *Almanza,* in a similar fact situation, declined to apply the *Almanza* test.

Furthermore, it seems elementary that if *Almanza* were applied, the failure to submit the issue in question for jury determination, amounted to "some" harm, because if the jury had determined the issue favorably to the appellant, the stop would have been illegal, thus the appellant would have been acquitted. *See Arline v. State,* 721 S.W.2d 348 (Tex.Crim.App.1986) (in the *Almanza* analysis, "some" harm means *any* harm.)

The State's motion for rehearing is overruled.

HECHT, J., files a concurring opinion.

## ON MOTION FOR REHEARING

HECHT, Justice, concurring.

On motion for rehearing, the State urges us to consider whether the trial court's erroneous refusal to instruct the jury as required by article 38.23, Texas Code of Criminal Procedure, was harmless under *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1984) (opinion on rehearing). The majority do not apply *Almanza* because the court of criminal appeals did not do so in *Stone v. State,* 703 S.W.2d 652 (Tex.Crim.App.1986) (en banc), a case very similar to ours decided after *Almanza.* I would hold that *Almanza* must be applied.

By both its language and its logic, *Almanza* applies to an erroneous refusal to give an article 38.23 instruction. Why the court of criminal appeals did not apply *Almanza* in *Stone* I do not know. Importantly, however, *Stone* does not hold *Almanza* inapplicable to the charging error considered there and which we now have before us. *Almanza* speaks. *Stone* is silent. *Almanza* should be heard.

I agree with the majority that under *Almanza,* the error in this case is not harmless. The evidence as to whether Jacobs was intoxicated came from three sources. The arresting officer testified that she saw Jacobs' pickup weaving down the highway, and that, based upon her observation of Jacobs and Jacobs' failure of

1. *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim. App.1984) (opinion on rehearing).

several field sobriety tests, Jacobs was intoxicated. Jacobs testified that he had been drinking beer and eating from about 6:30 p.m. to 11:30 p.m., but denied that he was intoxicated or that he was weaving on the road. The breath test result of 0.11 percent showed Jacobs to be intoxicated.

We have previously found the evidence to raise an issue as to whether the officer had reasonable suspicion to stop Jacobs. The jury might well have concluded she did not. Had they been properly instructed, they would have been required to disregard all evidence illegally obtained, including the officer's testimony of everything after the stop and the breath test result. The only remaining evidence of intoxication would have been the officer's testimony that Jacobs' was weaving on the road and Jacobs' testimony that he had been drinking, evidence which well might not have been sufficient for conviction. Therefore, the failure to instruct the jury properly was calculated to and probably did injure Jacobs.