In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-363 CR


____________________



LYNN STEVEN LETNER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 2


Montgomery County, Texas


Trial Cause No. 02-178987






OPINION


 A jury found Lynn Steven Letner guilty of driving while intoxicated. Tex. Pen. Code
Ann. § 49.04 (Vernon 2003). The court assessed punishment at 180 days of confinement in
the Montgomery County jail, probated for fifteen months of community supervision, and a
$600 fine. The sole point of error raised on appeal challenges the factual sufficiency of the
evidence to support the verdict. 

 In a factual sufficiency review, we view all the evidence in a neutral
light, both for and against the finding, and set aside the verdict if "proof of
guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof." In conducting such a review, we consider all
of the evidence weighed by the jury, comparing the evidence which tends to
prove the existence of the elemental fact in dispute to the evidence which tends
to disprove it. We are authorized to disagree with the jury's determination
even if probative evidence exists which supports the verdict, but we must
avoid substituting our judgment for that of the fact-finder.


Vodochodsky v. State, No. 74129, 2004 WL 840121, *6 (Tex. Crim. App. Apr. 21, 2004)
(footnotes omitted). 

 There is only one question to be answered in a factual-sufficiency-
review: Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt? However, there are two
ways in which the evidence may be insufficient. First, when considered by
itself, evidence supporting the verdict may be too weak to support the finding
of guilt beyond a reasonable doubt. Second, there may be both evidence
supporting the verdict and evidence contrary to the verdict. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong
enough that the beyond-a-reasonable-doubt standard could not have been met,
so the guilty verdict should not stand. This standard acknowledges that
evidence of guilt can "preponderate" in favor of conviction but still be
insufficient to prove the elements of the crime beyond a reasonable doubt.
Stated another way, evidence supporting guilt can "outweigh" the contrary
proof and still be factually insufficient under a beyond-a-reasonable-doubt
standard.


Zuniga v. State, No. 539-02, 2004 WL 840786, *7 (Tex. Crim. App. Apr. 21, 2004). 

 The sole witness at trial, Texas Department of Public Safety Trooper Rodney Lott,
testified that he arrived at the scene of a single-vehicle accident within six or seven minutes
of dispatch, and found the appellant sitting on his Harley Davidson motorcycle with the
motor running. Letner informed Trooper Lott that he was turning right and the bike slipped
out from under him. Traffic was light and the concrete road was dry, with an excellent
traction surface, dry pavement, and no fluids or oil on the road. Lott estimated the accident
had occurred only minutes before, because someone usually calls in an accident right away. 

 Several cues, which he had been trained to look for, made Lott suspect that Letner
might be intoxicated. Lott could smell the odor of alcohol on the appellant. Letner could not
find his license in his wallet, although Lott could see it from his position. This indicated that
Letner was experiencing attention problems. When the officer remarked about the alcohol,
Letner admitted that he had been drinking at a neighbor's house. He did not volunteer what
had been consumed, nor did he mention when he had stopped drinking. Letner's reaction
times and facial expressions were inappropriate for the circumstances, and his voice slurred
slightly, consistent with intoxication. Letner had scraped his knee, but he did not complain
much about it; although Lott summoned EMS, the appellant declined treatment. He was
unsteady on his feet while walking, and his movements were slow and exaggerated. 

 Suspicious that the appellant might be impaired, Trooper Lott conducted field sobriety
tests on the appellant. Letner showed all six cues on the horizontal gaze nystagmus test: lack
of smooth pursuit in both eyes, distinct nystagmus at maximum deviation, and onset at 45
degrees in both eyes. Lott testified that, in his experience, which spanned over seven years,
the HGN test proved to be as accurate as an Intoxilyzer. Letner did not exhibit vertical
nystagmus. Letner followed Lott's instructions with difficulty, and Lott had to explain them
three times in order for Letner to comply. The appellant swayed back and forth while
attempting the test. Continuing his investigation, Lott administered the walk-and-turn test.
In the instruction phase of the test, Letner could not maintain his balance while holding one
foot in front of the other. Letner never did manage to stand with one foot in front of the
other, and eventually informed the trooper that he was scared. Letner was unable to perform
the walk-and-turn test, so Lott moved on to the one-legged stand test. The appellant
informed the officer that he was tired, and did not attempt the one-legged stand. Trooper
Lott testified that through his training and experience, he developed skill in recognizing when
someone had lost the normal use of their mental and physical faculties because of the use of
alcohol, and that in his opinion Letner had lost the normal use of his faculties because of
alcohol consumption. 

 Lott arrested Letner and transported him to the jail. Although Letner initially
indicated that he would consent to providing a breath sample, he refused the test when Lott
advised him that he could not drink a glass of water first. The appellant refused the breath
test and did not sign the DIC-24 statutory warning form. On cross-examination, Lott
conceded that he did not know what Letner had to drink, or when he had his first and his last
drinks. 

 A videotape of the roadside encounter, including the field sobriety tests, permitted the
jury to observe the appellant's behavior. Letner is obviously not in control of his mental and
physical faculties on the recording. 

 Letner contends the evidence supporting the verdict is too weak to support the finding
of guilt beyond a reasonable doubt because the State adduced no evidence of what, how
much or when Letner consumed alcohol. Absent this information Lott could not, he argues,
make any extrapolation-type judgment about the appellant's intoxication when he was
driving. His argument had its genesis in a case decided soon after the DWI statute added
0.10% alcohol concentration as a per se theory of intoxication. Forte v. State, 707 S.W.2d
89, 94-95 (Tex. Crim. App. 1986). The Court noted "the jury must still be convinced beyond
a reasonable doubt that an inference can be made from the results of the chemical test that
the defendant had a 0.10% alcohol concentration in his body at the time of the offense." Id.
at 95. The appellant argues that extrapolation is a factor in assessing the strength of the
State's case, even if the State does not rely on a breath or blood test result. He contends
Trooper Lott's opinion testimony is significantly weakened by the lack of evidence from
which to make a reliable retrograde extrapolation. In making his argument, he relies upon
three cases where the issue presented concerned the admissibility of expert testimony to
prove the blood alcohol content: Stewart v. State, 129 S.W.3d 93 (Tex. Crim. App. 2004);
Bagheri v. State, 119 S.W.3d 755 (Tex. Crim. App. 2003); and Mata v. State, 46 S.W.3d 902,
908-09 (Tex. Crim. App. 2001). As the Court noted in Stewart, sufficiency of the evidence
is not the appropriate standard for assessing admissibility of evidence. Stewart, 129 S.W.3d
at 96. Regardless, these cases do not compel us to require extrapolation evidence to support
a verdict of guilt. As was the case in Stewart v. State, the issue here is whether the appellant
was intoxicated at the time he drove. The field sobriety tests tend to make it more probable
that he was intoxicated at the time he drove because it provides evidence that he had
consumed alcohol. There is no evidence that Letner consumed alcohol after driving. In
Stewart, the Court of Criminal Appeals held that even without retrograde extrapolation
evidence, the breath test results, along with the officer's testimony and the videotape of the
appellant, were probative evidence of the appellant's intoxication. Stewart, 129 S.W.3d at
96. The Court did not assess the sufficiency of that evidence to support a conviction because
that was not the issue before the court in that case. 

 The appellant is asking this Court to graft an analysis developed for relevancy of
expert testimony to prove a different theory of intoxication onto a case that does not involve
either evidence of a breath test or proof of blood alcohol content. Unlike blood alcohol
content, use of mental and physical faculties is patently observable and does not absolutely
require scientific testing in order to be established. If Letner was too drunk to successfully
perform field sobriety tests at an unknown point after having driven, and there is no evidence
that he consumed alcohol after driving but before being observed to be intoxicated, there are
two possible hypotheses. One, that he consumed alcohol, drove while sober, was involved
in a one-vehicle accident under excellent driving conditions, then became intoxicated after
he ceased driving. Two, that he consumed alcohol, became intoxicated, drove while
intoxicated, and was involved in a one-vehicle accident under excellent driving conditions. 
The question is whether the unknown factors - (1) what, when or how much the appellant
drank, and (2) the length of time between the accident, when Letner stopped driving, and the
field sobriety test - sufficiently undermine our confidence in the jury's verdict.

 It is possible that, due to alcohol absorption, the appellant's use of his faculties
diminished between driving and testing. But there is no evidence supporting that theory. 
Were the inference of guilt weaker in this case, or were there evidence of solely very recent
alcohol consumption, the effect of the unknown factors might weigh more significantly. But
the evidence supporting an inference of guilt is quite strong. The appellant wrecked his
Harley trying to negotiate a simple turn under otherwise safe driving conditions. When the
officer arrived, Letner smelled of alcohol, performed simple tasks with difficulty, slurred his
speech, swayed while standing, and walked unsteadily. The appellant showed all six signs
in the horizontal gaze nystagmus test, could not perform the walk-and-turn test, and refused
to perform the one-legged stand test. Letner admitted he had been drinking. Trooper Lott
formed an opinion that Letner was intoxicated at the time he performed the field sobriety
tests. Observing the videotape of the field sobriety tests, the jury could have concluded that
at the time the field sobriety tests were administered, Letner did not have the normal use of
his mental and physical faculties. Although he sustained abrasions and contusions to his leg
in the accident, Letner did not appear to be in pain, and declined medical treatment, so the
jury could have discounted injury as the reason for Letner's mental confusion and physical
infirmity. We conclude that the evidence supporting the verdict was not so weak as to be
clearly wrong and manifestly unjust, nor was the contrary evidence so strong that the
standard of proof, beyond a reasonable doubt, could not have been met. We hold the
evidence is factually sufficient. The point of error is overruled and the judgment is affirmed.

 AFFIRMED.


 PER CURIAM



Submitted on April 15, 2004

Opinion Delivered June 9, 2004

Publish


Before McKeithen, C.J., Burgess and Gaultney, JJ.