Affirm and Memorandum Opinion filed October 31, 2006








Affirm and Memorandum Opinion filed October 31, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00461-CR

____________

 

JAMES KIZZEE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 12th
Judicial District Court

Walker County, Texas

Trial Court Cause No. 21,872

 



 

M E M O R A N D U M   O P I N I O N

After a bench trial, the court convicted appellant, James
Kizzee, of felony driving while intoxicated.  Tex.
Pen. Code Ann. '' 49.04(a), 49.09(b)(2) (Vernon 2003).  The
court sentenced appellant to two years= confinement probated for five years, with six months= confinement in the Walker County
jail as a condition of probation.  In his sole point of error, appellant
contends the evidence is factually insufficient to prove he was intoxicated
while operating a motor vehicle.  We affirm. 

 








Factual and Procedural Background

At
approximately midnight on September 7, 2002, Officer Mike Legurski of the
Huntsville Police Department stopped appellant=s vehicle after observing appellant
make a left turn without using his turn signal.  Legurski recognized appellant=s van and knew appellant had an
occupational license because he detained appellant approximately one week
earlier for a separate traffic violation.  Upon being pulled over, appellant
stopped his van in the driveway of his cousin=s mobile home.  Legurski approached
the van and asked appellant for his driver=s license.  As appellant reached for
his paperwork, his foot slipped off of the brake and the van began to roll
toward the mobile home.  Legurski testified appellant Agot the van stopped right before it
crashed into the mobile home.@  While speaking to appellant, Legurski observed appellant=s mannerisms were slow, his speech
was slurred, and the odor of alcohol was coming from either appellant or his
vehicle.  Suspecting appellant was intoxicated, Legurski asked appellant to
step out of his van and perform field sobriety tests.  Appellant performed the
horizontal gaze nystagmus (HGN) test and the one-leg stand test but did not
perform the walk-and-turn test because appellant claimed to have an injured
ankle.  Legurski observed all of the six possible clues of intoxication based
on the HGN test and three of the four possible clues in the one-leg stand
test.  Based on his observations, Legurski determined appellant was intoxicated
and took him into custody.  Legurski then searched appellant=s van and found an open container of
beer within reach of the driver.  Although he initially denied having consumed
any alcohol, appellant later admitted to Legurski that he had consumed a beer. 








Legurski
transported appellant to the Walker County jail where appellant performed the
field sobriety tests again.  This time appellant performed all three tests
(HGN, walk-and-turn, and one-leg stand), and the results were similar to those
obtained at the scene.  Legurski videotaped appellant=s performances on the sobriety tests
at the scene and at the jail, but neither tape recorded properly.[1] 
At the jail, appellant agreed to provide a sample of his breath for an
intoxilyzer test. Officer Jose Valles, a certified intoxilyzer operator,
administered the test and obtained two breath samples from appellant.  The
results of appellant=s intoxilyzer test showed a breath alcohol concentration of
0.198 and 0.195. On April 15, 2003, a Walker County grand jury indicted
appellant for driving while intoxicated third offense.  The indictment alleged
appellant operated a motor vehicle in a public place while intoxicated Aby not having the normal use of
mental or physical faculties by reason of the introduction of alcohol into the
body, or by having an alcohol concentration of at least 0.08.@  Appellant pleaded not guilty and
waived his right to a jury trial.   

During
appellant=s trial, Officer Legurski testified that he has been certified in
performing standardized field sobriety tests and detecting signs of
intoxication for ten years.  Legurski further testified about his observations
of appellant on the night of appellant=s arrest, including: 1) appellant=s failure to control his van while
searching for his paperwork, 2) appellant=s slurred speech and slow mannerisms,
3) the odor of alcohol emanating from appellant or his vehicle, 4) the open
container of beer found in appellant=s vehicle, and 5) appellant=s failure of the field sobriety tests
during the traffic stop and at the jail.  On cross-examination, Legurski
testified he has not received any continuing education pertaining to field
sobriety testing since his initial certification.  








Officer
Valles testified he is a certified police officer, a certified instructor of
field sobriety testing, and certified operator of the Intoxilyzer 5000.[2] 
Valles testified that on the night of appellant=s arrest, he obtained two breath
samples from appellant, approximately thirty to forty-five seconds apart.  The
Intoxilyzer 5000  analyzed appellant=s breath samples, and the results
showed an alcohol concentration of 0.198 and 0.195.  A printout of the
intoxilyzer test results was admitted into evidence.  During cross-examination,
Valles testified he does not understand the internal workings or technical
aspects of the Intoxilyzer 5000.  Rather, his training focused on the operation
of the intoxilyzer and interpretation of its results.  

The
State=s next witness was Officer Glen
Mercord, a technical supervisor in the Texas Department of Public Safety Breath
Alcohol Testing Program.  Mercord=s primary duties included maintaining
the integrity of the testing program in his area; maintaining, inspecting, and
repairing intoxilyzers; training operators in the use of intoxilyzers; and
keeping records.  Mercord testified that every intoxilyzer was checked via
phone line and computer approximately once a week and was checked in person at
least once per calendar month.  The intoxilyzer used to test appellant=s breath samples was physically
tested by a supervisor on September 3, 2002, four days prior to appellant=s arrest, and October 2, 2002. 
Mercord was not the technical supervisor who performed the testing.  However,
based on reports created by a previous technical supervisor, Mercord testified
that the intoxilyzer used on appellant was functioning properly at the time of
appellant=s arrest.  Further, based on his training, experience, and the results of
appellant=s breath test, Mercord opined that appellant was intoxicated at the time
he provided the breath samples.  








To rebut
the State=s evidence, the defense called appellant=s cousin, Charlene Manning.  Manning
testified she was sitting on her front porch drinking a beer when appellant
pulled into her driveway followed by a police officer.  Manning claimed she
never saw the van roll forward or come close to hitting her mobile home; she
thought appellant was driving normally; and appellant=s speech sounded clear when he spoke
to the police officer.  Manning testified that she spoke to appellant for
approximately twenty minutes while the officer searched appellant=s van, and she did not think
appellant was intoxicated.  Manning further testified appellant had Abad legs@ and his right foot had been cut and
shot in the past.           After a bench trial, the court found appellant
guilty of felony driving while intoxicated and assessed punishment at two years= confinement probated for five years,
with six months= confinement in the Walker County jail as a condition of
probation.  This appeal followed.  

 

Discussion

I. Standard of Review

A
factual sufficiency review begins with the presumption that the evidence
supporting the judgment is legally sufficient. Clewis v. State, 922
S.W.2d 126, 134 (Tex. Crim. App. 1996).  In a factual sufficiency review, we
consider all the evidence in a neutral light and determine whether a jury was
rationally justified in finding guilt beyond a reasonable doubt. Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  The evidence may be
factually insufficient in two ways.  Id.  First, when considered by
itself, evidence supporting the verdict may be so weak the verdict is clearly
wrong and manifestly unjust.  Prible v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).   Second,
where the evidence both supports and contradicts the verdict, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met.  Id.  In conducting a factual sufficiency
review, we must employ appropriate deference so that we do not substitute our
judgment for that of the fact finder.  Jones v. State, 944 S.W.2d 642,
648 (Tex. Crim. App. 1996).  Our analysis must consider the evidence appellant
claims is most important in allegedly undermining the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  

II. Analysis








To prove appellant committed
felony DWI, the State is required to prove beyond a reasonable doubt appellant
was intoxicated while operating a motor vehicle in a public place and had two
prior convictions for DWI.[3]  Tex. Pen. Code Ann. '' 49.04(a), 49.09(b)(2).  AIntoxicated@
means not having the normal use of mental or physical faculties by reason of
the introduction of alcohol into the body, or having an alcohol
concentration of 0.08 or more.  Id. ' 49.01(2)(A)B(B)
(Vernon 2003).  Hence, the State may prove intoxication either by showing
appellant lost the normal use of his mental or physical faculties or by proving
appellant had an alcohol concentration of 0.08 or more.  Id.; Forte
v. State, 707 S.W.2d 89, 95 (Tex. Crim. App. 1986). 

Initially, we review the record for evidence supporting the guilty
verdict.  The State presented evidence of appellant=s
alcohol concentration as well as his loss of normal use of mental or physical
faculties.  Two samples of appellant=s breath were obtained
and analyzed by Officer Valles, a certified intoxilyzer operator, and the
results showed an alcohol concentration of 0.198 and 0.195.  Officer Legurski
testified appellant reeked of alcohol, exhibited slurred speech and slowed
mannerisms, and twice failed field sobriety tests.   Therefore, we find the
evidence supporting the verdict, when viewed in a neutral light and standing
alone, is not so weak that the verdict is clearly wrong and manifestly unjust. 
 See Zuniga, 144 S.W.3d at 484B85.








Next, we balance the evidence supporting the verdict with the
contrary evidence to determine whether the contrary evidence is strong enough
that the beyond-a-reasonable-doubt standard could have been met.  In his brief,
appellant points to the following evidence which he argues is contrary to the
court=s
finding of guilt: 1) the absence of videotape evidence of appellant performing
field sobriety tests; 2) Legurski=s testimony that he
received no continuing education regarding the administration of field sobriety
tests; 3) Legurski=s testimony that he
formed the opinion appellant was intoxicated by the time appellant exited his
vehicle; 4) Legurski=s testimony that
appellant claimed to have high blood pressure;[4]
5) testimony of Legurski and Manning indicating appellant had an injured ankle;
6) Manning=s testimony that appellant=s
vehicle did not roll forward when appellant exited the vehicle; 7) Manning=s
testimony that appellant behaved normally and did not seem intoxicated when she
spoke to him on the night of his arrest; 8) Valles=
testimony that he knew how to operate the Intoxilyzer 5000 and interpret its
results, but did not understand the technical aspects of how the intoxilyzer
functioned; and 9) Mercord=s testimony that he was
not a technical supervisor at the time appellant=s intoxilyzer test was
administered.          

In a bench trial, the trial court is the exclusive judge of the
credibility of the witnesses and the weight to be given to their testimony.  Mattias
v. State, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987).  The trial court is
authorized to accept or reject any or all of the testimony of the witnesses.  Id. 
Thus, the trial court was free to believe Legurski=s
testimony regarding appellant=s appearance and behavior
on the night of his arrest, despite the conflicting testimony offered by
Manning.  See id.  Further, in order for a police officer to testify as
an expert on the administration of a field sobriety test, he need only prove he
is certified to administer the test by the State of Texas.  See Held v.
State, 948 S.W.2d 45, 51 (Tex. App.CHouston [14th Dist.]
1997, pet. ref=d) (citing Emerson v. State, 880 S.W.2d
759, 769 (Tex. Crim. App. 1994)). At the time of appellant=s
arrest, Legurski was certified by the State of Texas to perform field sobriety
tests, including the HGN, walk-and-turn, and one-leg stand tests.   

Importantly, the record contains little, if any, evidence which
contradicts the State=s evidence of appellant=s
alcohol concentration at the time of his arrest. 

We have reviewed the entire record.  Based on this record, we
cannot say the evidence contrary to the verdict is so overwhelming that the
beyond-a-reasonable-doubt standard could not have been met.  See Zuniga,
144 S.W.3d at 484B85.  As the evidence is
factually 

 

 








sufficient to support appellant=s conviction, we overrule appellant=s sole point of error and affirm the
judgment of the trial court.

 

 

 

 

 

/s/        John S. Anderson

Justice

 

 

Judgment rendered and
Opinion filed October 31, 2006.

Panel consists of
Justices Anderson, Hudson, and Guzman.

Do Not Publish C
Tex. R. App. P. 47.2(b).

 









[1]  Officer Legurski testified that the video recording
equipment at the jail had been having problems Aoff and on for quite some time@
and failed to record on the night of appellant=s arrest.  Legurski further testified that the videotape of appellant
made from Legurski=s patrol car contained no audio.





[2]  In 1999 or 2000, Officer Valles successfully
completed a course of instruction and became a certified operator of the
intoxilyzer 5000.  Thereafter, he maintained his certification by completing an
annual re-certification process. 





[3]  The State introduced evidence showing appellant had
two prior convictions for DWI.  Appellant does not dispute this issue on
appeal.





[4]  Appellant argues evidence that he has high blood
pressure provides an alternative explanation for appellant having reddening of
the eyes at the time of his arrest.  However, none of the State=s witnesses testified appellant had red eyes when he
was arrested.  Therefore, evidence of appellant=s high blood pressure is not contrary to the State=s evidence.