**Lynn Steven LETNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–03–363 CR.

Court of Appeals of Texas,
Beaumont.

Submitted April 15, 2004.

Decided June 9, 2004.

Janet Morrow, Gerald E. Bourque, Spring, for appellant.

Michael A. McDougal, Dist. Atty., Brett Peabody, Michael C. Young, Asst. Dist. Atty's, Conroe, for state.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

**OPINION**

PER CURIAM.

A jury found Lynn Steven Letner guilty of driving while intoxicated. TEX. PEN. CODE ANN. § 49.04 (Vernon 2003). The court assessed punishment at 180 days of confinement in the Montgomery County jail, probated for fifteen months of community supervision, and a $600 fine. The sole point of error raised on appeal challenges the factual sufficiency of the evidence to support the verdict.

In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if "proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." In conducting such a review, we consider all of the evidence weighed by the jury, comparing the evidence which tends to prove the existence of the elemental fact in dispute to the evidence which tends to disprove it. We are authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, but we must avoid substituting our judgment for that of the fact-finder.

*Vodochodsky v. State,* No. 74129, —— S.W.3d ——, ——, 2004 WL 840121, *6 (Tex.Crim.App. Apr.21, 2004) (footnotes omitted).

There is only one question to be answered in a factual-sufficiency-review: Considering all of the evidence in a neu-

tral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. This standard acknowledges that evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can "outweigh" the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.

*Zuniga v. State*, No. 539–02, —— S.W.3d ——, ——, 2004 WL 840786, *7 (Tex.Crim. App. Apr.21, 2004).

The sole witness at trial, Texas Department of Public Safety Trooper Rodney Lott, testified that he arrived at the scene of a single-vehicle accident within six or seven minutes of dispatch, and found the appellant sitting on his Harley Davidson motorcycle with the motor running. Letner informed Trooper Lott that he was turning right and the bike slipped out from under him. Traffic was light and the concrete road was dry, with an excellent traction surface, dry pavement, and no fluids or oil on the road. Lott estimated the accident had occurred only minutes before, because someone usually calls in an accident right away.

Several cues, which he had been trained to look for, made Lott suspect that Letner might be intoxicated. Lott could smell the odor of alcohol on the appellant. Letner could not find his license in his wallet, although Lott could see it from his position. This indicated that Letner was experiencing attention problems. When the officer remarked about the alcohol, Letner admitted that he had been drinking at a neighbor's house. He did not volunteer what had been consumed, nor did he mention when he had stopped drinking. Letner's reaction times and facial expressions were inappropriate for the circumstances, and his voice slurred slightly, consistent with intoxication. Letner had scraped his knee, but he did not complain much about it; although Lott summoned EMS, the appellant declined treatment. He was unsteady on his feet while walking, and his movements were slow and exaggerated.

Suspicious that the appellant might be impaired, Trooper Lott conducted field sobriety tests on the appellant. Letner showed all six cues on the horizontal gaze nystagmus test: lack of smooth pursuit in both eyes, distinct nystagmus at maximum deviation, and onset at 45 degrees in both eyes. Lott testified that, in his experience, which spanned over seven years, the HGN test proved to be as accurate as an Intoxilyzer. Letner did not exhibit vertical nystagmus. Letner followed Lott's instructions with difficulty, and Lott had to explain them three times in order for Letner to comply. The appellant swayed back and forth while attempting the test. Continuing his investigation, Lott administered the walk-and-turn test. In the instruction phase of the test, Letner could not maintain his balance while holding one foot in front of the other. Letner never did manage to stand with one foot in front of the other, and eventually informed the trooper that he was scared. Letner was unable to perform the walk-and-turn test, so Lott moved on to the one-legged stand test. The appellant informed the officer

that he was tired, and did not attempt the one-legged stand. Trooper Lott testified that through his training and experience, he developed skill in recognizing when someone had lost the normal use of their mental and physical faculties because of the use of alcohol, and that in his opinion Letner had lost the normal use of his faculties because of alcohol consumption.

Lott arrested Letner and transported him to the jail. Although Letner initially indicated that he would consent to providing a breath sample, he refused the test when Lott advised him that he could not drink a glass of water first. The appellant refused the breath test and did not sign the DIC–24 statutory warning form. On cross-examination, Lott conceded that he did not know what Letner had to drink, or when he had his first and his last drinks.

A videotape of the roadside encounter, including the field sobriety tests, permitted the jury to observe the appellant's behavior. Letner is obviously not in control of his mental and physical faculties on the recording.

Letner contends the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt because the State adduced no evidence of what, how much or when Letner consumed alcohol. Absent this information Lott could not, he argues, make any extrapolation-type judgment about the appellant's intoxication when he was driving. His argument had its genesis in a case decided soon after the DWI statute added 0.10% alcohol concentration as a *per se* theory of intoxication. *Forte v. State*, 707 S.W.2d 89, 94–95 (Tex.Crim.App.1986). The Court noted "the jury must still be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had a 0.10% alcohol concentration in his body *at the time of the offense.*" *Id.* at 95. The

appellant argues that extrapolation is a factor in assessing the strength of the State's case, even if the State does not rely on a breath or blood test result. He contends Trooper Lott's opinion testimony is significantly weakened by the lack of evidence from which to make a reliable retrograde extrapolation. In making his argument, he relies upon three cases where the issue presented concerned the admissibility of expert testimony to prove the blood alcohol content: *Stewart v. State*, 129 S.W.3d 93 (Tex.Crim.App.2004); *Bagheri v. State*, 119 S.W.3d 755 (Tex.Crim.App. 2003); and *Mata v. State*, 46 S.W.3d 902, 908–09 (Tex.Crim.App.2001). As the Court noted in *Stewart*, sufficiency of the evidence is not the appropriate standard for assessing admissibility of evidence. *Stewart*, 129 S.W.3d at 96. Regardless, these cases do not compel us to require extrapolation evidence to support a verdict of guilt. As was the case in *Stewart v. State*, the issue here is whether the appellant was intoxicated at the time he drove. The field sobriety tests tend to make it more probable that he was intoxicated at the time he drove because it provides evidence that he had consumed alcohol. There is no evidence that Letner consumed alcohol after driving. In *Stewart*, the Court of Criminal Appeals held that even without retrograde extrapolation evidence, the breath test results, along with the officer's testimony and the videotape of the appellant, were probative evidence of the appellant's intoxication. *Stewart*, 129 S.W.3d at 96. The Court did not assess the sufficiency of that evidence to support a conviction because that was not the issue before the court in that case.

The appellant is asking this Court to graft an analysis developed for relevancy of expert testimony to prove a different theory of intoxication onto a case that does not involve either evidence of a breath test

or proof of blood alcohol content. Unlike blood alcohol content, use of mental and physical faculties is patently observable and does not absolutely require scientific testing in order to be established. If Letner was too drunk to successfully perform field sobriety tests at an unknown point after having driven, and there is no evidence that he consumed alcohol after driving but before being observed to be intoxicated, there are two possible hypotheses. One, that he consumed alcohol, drove while sober, was involved in a one-vehicle accident under excellent driving conditions, then became intoxicated after he ceased driving. Two, that he consumed alcohol, became intoxicated, drove while intoxicated, and was involved in a one-vehicle accident under excellent driving conditions. The question is whether the unknown factors—(1) what, when or how much the appellant drank, and (2) the length of time between the accident, when Letner stopped driving, and the field sobriety test—sufficiently undermine our confidence in the jury's verdict.

It is possible that, due to alcohol absorption, the appellant's use of his faculties diminished between driving and testing. But there is no evidence supporting that theory. Were the inference of guilt weaker in this case, or were there evidence of solely very recent alcohol consumption, the effect of the unknown factors might weigh more significantly. But the evidence supporting an inference of guilt is quite strong. The appellant wrecked his Harley trying to negotiate a simple turn under otherwise safe driving conditions. When the officer arrived, Letner smelled of alcohol, performed simple tasks with difficulty, slurred his speech, swayed while standing, and walked unsteadily. The appellant showed all six signs in the horizontal gaze nystagmus test, could not perform the walk-and-turn test, and refused to perform the one-legged stand test. Letner admitted he had been drinking. Trooper Lott formed an opinion that Letner was intoxicated at the time he performed the field sobriety tests. Observing the videotape of the field sobriety tests, the jury could have concluded that at the time the field sobriety tests were administered, Letner did not have the normal use of his mental and physical faculties. Although he sustained abrasions and contusions to his leg in the accident, Letner did not appear to be in pain, and declined medical treatment, so the jury could have discounted injury as the reason for Letner's mental confusion and physical infirmity. We conclude that the evidence supporting the verdict was not so weak as to be clearly wrong and manifestly unjust, nor was the contrary evidence so strong that the standard of proof, beyond a reasonable doubt, could not have been met. We hold the evidence is factually sufficient. The point of error is overruled and the judgment is affirmed.

AFFIRMED.