In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-524 CR


____________________



DEREK JON ENGELSTAD, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Court Cause No. 03-05-03808 CR






MEMORANDUM OPINION


 Appellant, Derek Jon Engelstad, was convicted of intoxication manslaughter, and
the jury sentenced him to ten years of probation and a $10,000 fine. In this appeal,
Engelstad argues the evidence was factually insufficient to support his conviction. He says
the evidence failed to establish he was intoxicated while operating a motor vehicle, and
failed to establish his intoxication caused the victim's death.

 When addressing an issue of factual sufficiency, an appellate court asks whether,
considering all of the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond a reasonable doubt. See Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim.
App. 2004). 

 [T]here are two ways in which the evidence may be insufficient. First, when
considered by itself, evidence supporting the verdict may be too weak to
support the finding of guilt beyond a reasonable doubt. Second, there may
be both evidence supporting the verdict and evidence contrary to the verdict. 
Weighing all the evidence under this balancing scale, the contrary evidence
may be strong enough that the beyond-a-reasonable-doubt standard could not
have been met, so the guilty verdict should not stand. This standard
acknowledges that evidence of guilt can "preponderate" in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt. 


Id. at 484-485. An appellate court "must give due deference to the fact finder's
determinations concerning the weight and credibility of the evidence and will reverse the
fact finder's determination only to arrest the occurrence of a manifest injustice."
Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003). The jury is the ultimate
authority as to the credibility of witnesses and the weight to be given their testimony. See
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).

 Dustin Stromsness testified he and Engelstad were friends and fraternity brothers. 
Stromsness stated that he called Engelstad, who was in Houston, and invited him to come
to Huntsville. When Engelstad received the phone call, he was dining at Chili's with
another friend, the deceased. The two drove to Huntsville and Stromsness gave Engelstad
directions to a bar called the Jolly Fox, where a fraternity party was being held. Engelstad
drove his car to the bar, and he and the deceased stayed at the bar until approximately 1:00
a.m., and then left to return home. According to Stromsness, Engelstad was drinking at
the party.

 At 4:04 a.m., paramedics Allison Remy and Carla Breeding were called to a motor
vehicle accident, approximately eight miles north of the city of Montgomery. Remy and
Breeding arrived at the scene of a one-car accident at 4:21 a.m. The car was overturned
in a ditch, and two men were inside the car. One of the men was deceased, and the other
had minor injuries. When Remy and Breeding found Engelstad and the deceased,
Engelstad was holding a piece of material against the deceased's head. In response to the
paramedics' inquiries, Engelstad said he had left the Jolly Fox around 12:45 or 1:00 a.m.,
and was driving back to Houston. Engelstad stated he had been drinking, and Breeding
testified she smelled alcohol on Engelstad. Engelstad stated he had been wearing his
seatbelt, and the paramedics observed a bruise consistent with a driver's side seatbelt
injury in Engelstad's left armpit area. Engelstad stated he could not remember the
accident. When Engelstad was in the ambulance, the paramedics repeated their questions
to gauge his cognitive functions. Engelstad repeated that he had been drinking, he was
driving, and he was wearing his seatbelt. When Engelstad was in the hospital, he repeated
the same statements to the nurse. 

 Engelstad's attending physician, Dr. Kovar, testified that Engelstad's blood was
drawn for a toxicology screen at approximately 7:00 a.m. The toxicology report states the
blood was collected at 7:20 a.m. (1) The results of the toxicology screen showed an "[a]lcohol
level of 153 milligrams per deciliter which is in excess of the 80 milligrams per deciliter
which is outlined by the statutes." Dr. Kovar testified that someone with that amount of
alcohol in his system "would be significantly impaired." On cross-examination, Dr. Kovar
explained how to calculate Engelstad's blood alcohol level at an earlier time. Dr. Kovar
testified that once an individual's rate of alcohol elimination is determined, that rate can be
applied back, limited by when the person had his last drink. Dr. Kovar stated he performed
a neurological exam on Engelstad and observed horizontal nystagmus, a sign of alcohol
intoxication, in Engelstad's extra-ocular movements. Dr. Kovar also testified the abrasions
on Engelstad's left chest and shoulder region were consistent with a driver's-side seatbelt
injury. 

 Trooper Angela Fountain testified she arrived at the accident at approximately 5:30
a.m., after Engelstad had been taken to the hospital. Trooper Fountain determined the car
had left the pavement where the roadway curved. Fountain stated Engelstad had continued
to drive straight ("straightened up the curve"). Fountain testified there were warning signs
before the curve, as well as signs posted along the curve, and that Engelstad's car had struck
a warning sign when his vehicle left the pavement. According to Fountain, after Engelstad's
car left the road, the tires slid along and sunk into the wet ground, and the car rolled over
onto its roof when its right edge hit a small group of trees. Fountain determined the victim
had not moved since the accident because there was "a large pool of blood underneath his
head that had run down towards the rest of his body towards the front of the vehicle, that
came directly from the pool of blood from his head. It was nowhere else in the vehicle." 
Fountain further determined the victim had suffered blunt trauma to his head from striking
the frame on the passenger side. Fountain stated she smelled a "very strong" odor of alcohol
on Engelstad when she subsequently spoke with him at the hospital. Fountain testified she
had observed Engelstad's injuries and believed they were consistent with a driver's-side
seatbelt injury.

 Engelstad's accident reconstruction expert, Leo Haney, concluded Engelstad's vehicle
had gone into a spin, slid sideways off the roadway, struck a signpost, and flipped onto its
top. Haney opined the rear wheels had locked, causing the car to go into a spin, but said he
was not certain what actually caused the accident. Defendant's second accident
reconstruction specialist, John Laughlin, testified that, after reviewing Haney's report, the
autopsy report, and Engelstad's medical records, he concluded the deceased had been
driving.

 Fountain was unable to perform field sobriety tests because Engelstad was injured and
lying on a hospital bed. Engelstad agreed to provide a blood sample, and one was drawn at
8:05 a.m. Robert Prince, a chemist with the Texas Department of Public Safety crime lab,
testified he analyzed the 8:05 a.m. blood sample and found it to be 0.133. Prince testified
someone with that blood alcohol concentration would not have the normal use of his mental
and physical faculties. Prince testified a person's body usually begins eliminating alcohol
about an hour after the last drink is consumed. Prince also stated that, if Engelstad's blood
alcohol level was 0.133 after the accident, one can assume it was greater at the time of the
accident.

 In his first issue, Engelstad says the evidence was factually insufficient to support the
conviction for intoxication manslaughter because the evidence did not prove he was
intoxicated while he operated a motor vehicle. Engelstad contends the existence of
alternative reasonable hypotheses renders the evidence factually insufficient, citing Wilson
v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999), and Harris v. State, 133 S.W.3d 760
(Tex. App. --Texarkana 2004, pet. ref'd). In Wilson, the Court of Criminal Appeals stated
the existence of an alternative reasonable hypothesis is relevant to a factual sufficiency
review, but is not determinative. See Wilson, 7 S.W.3d 141. In Harris, the Texarkana Court
of Appeals held that, although a court may consider reasonable alternative hypotheses, the
mere existence of reasonable alternative hypotheses does not render the evidence factually
insufficient to support a conviction. See Harris, 133 S.W.3d at 765 (adopting the analysis
of the Dallas Court of Appeals in Richardson v. State, 973 S.W.2d 384 (Tex. App.--Dallas
1998, no pet.)). Engelstad offered some "alternate hypotheses" in his brief and at trial such
as Engelstad drank after the accident, and was not intoxicated when he left the Jolly Fox; the
deceased, rather than Engelstad was driving; and inclement weather and flooding either
caused or contributed to the accident. However, the record is devoid of evidence supporting
the hypothesis that Appellant drank after the accident. As for the possibility of inclement
weather and the theory that deceased was driving, the jury was the ultimate judge of the
credibility of the witnesses and the weight to be given to their testimony. 

 Engelstad also cites Sinast v. State, 688 S.W.2d 631 (Tex. App.--Corpus Christi 1985,
pet. refused); Purvis v. State, 4 S.W.3d 118 (Tex. App.-Waco 1999, no pet.), and McCafferty
v. State, 748 S.W.2d 489 (Tex. App.-Houston [1st Dist.] 1988, no pet.) for the proposition
that, when a one-car accident occurs and there is no evidence as to the time of the accident,
some evidence is necessary to disprove the alternative hypothesis that the driver became
intoxicated after the accident took place. However, each of these cases is distinguishable
from the instant case. In Sinast, the appellant was found walking toward his car at the scene
of the accident, the car's engine was not hot, and there was no evidence as to the time of the
accident. Sinast, 688 S.W.3d at 632. In the instant case, Engelstad was found still trapped
inside his car, holding a piece of material against the deceased's head. There is no evidence
Engelstad left the vehicle after the accident, nor is there any evidence suggesting the vehicle
contained any alcohol Engelstad could have consumed while trapped inside. Purvis involved
a complaint of legal sufficiency. See Purvis, 4 S.W.3d at 119. Engelstad states "[a]rguably,
Purvis would have won a factual sufficiency point, but none was raised." We cannot make
that conclusion, and Purvis does not control our analysis here. In McCafferty, the court
reversed McCafferty's conviction on legally sufficiency grounds because there was no
evidence McCafferty did not consume alcohol between the time of the accident and the
arrival of police on the scene, the last witness to see McCafferty at the bar stated McCafferty
was not intoxicated, and the investigating officer noted the possible presence of beer cans
around the vehicle. See McCafferty, 748 S.W.2d at 490-491. In the instant case, there is no
evidence of alcoholic beverages in or around Engelstad's vehicle, and there is no indication
Engelstad was sober when he left the Jolly Fox.

 Stromsness testified Engelstad had been drinking at the fraternity party. Engelstad
told paramedics at the scene that he had been drinking, and Breeding testified she smelled
alcohol on Engelstad. At the hospital, Engelstad told the nurse he had been drinking. 
Engelstad also told the paramedics he was driving, and Dr. Kovar, Trooper Fountain, and the
paramedics all stated Engelstad's abrasions were consistent with driver's-side seatbelt
injuries. Fountain testified that the cause of the accident was Engelstad's failure to
successfully negotiate a curve, despite the presence of warning signs both before the curve
and along the curve. A blood sample which undisputedly was taken at 8:05 a.m., well after
Engelstad was taken to the hospital, showed Engelstad's blood alcohol level was 0.133. 
Prince testified someone with that blood alcohol concentration would not have the normal
use of his mental and physical faculties. Prince also testified that a person's body usually
begins eliminating alcohol about an hour after the last drink is consumed. Therefore, the jury
could have found Engelstad's blood alcohol level was greater than 0.08 when the accident
occurred. Engelstad's attending physician testified he observed horizontal nystagmus, a sign
of alcohol intoxication, when he performed a neurological examination of Engelstad. 

 Engelstad complains at length of the retrograde extrapolation testimony offered by Dr.
Kovar and Prince, and he even suggests that "[g]iven the absence of any evidence of loss of
normal use, it is clear that the jury's verdict must have been based on the expert testimony
of Prince and Kovar." We disagree. Texas law does not require retrograde extrapolation
evidence to support a verdict of guilt. See Letner v. State, 138 S.W.3d 539, 541 (Tex.
App.-Beaumont 2004, no pet. h.). It was within the province of the jury to assess the
credibility of witnesses and the weight to be given to their testimony, and, based upon the
strong evidence of Engelstad's intoxication, the jury was rationally justified in finding guilt
beyond a reasonable doubt. The evidence was factually sufficient to prove Engelstad was
intoxicated while operating a motor vehicle. Engelstad's first issue is overruled.

 In his second issue, Engelstad contends the evidence was factually insufficient
because it failed to prove his intoxication caused the death. As discussed above, the State
produced evidence that Engelstad's car left the pavement where the roadway curved. 
Fountain stated Engelstad had continued to drive straight ("straightened up the curve"). 
Fountain testified that, after Engelstad's car left the road, the tires slid along and sank into
the wet ground, and the car rolled over onto its roof when its right edge hit a small group of
trees. Fountain further determined the deceased had suffered blunt trauma to his head from
striking the frame on the passenger side.

 Section 6.04(a) of the Penal Code provides as follows: "A person is criminally
responsible if the result would not have occurred but for his conduct, operating either alone
or concurrently with another cause, unless the concurrent cause was clearly sufficient to
produce the result and the conduct of the actor clearly insufficient." Tex. Penal Code §
6.04(a) (Vernon 2003). The evidence is the car left the roadway and the car would not have
flipped and caused the victim's death but for the driver's conduct. From the evidence
presented, the jury reasonably could have concluded the fatal accident was a result of the
defendant's intoxication. The evidence is factually sufficient to support the verdict. 
Engelstad's second issue is overruled, and the judgment of the trial court is affirmed.

 AFFIRMED. 

 PER CURIAM

Submitted on December 1, 2004

Opinion Delivered December 29, 2004

Do Not Publish 

 

Before McKeithen, C.J., Burgess and Gaultney, JJ. 
1. Engelstad contends the first sample was drawn in the ambulance by the paramedics
at 4:43 a.m.